31 N.J. Super. 30 (1954)
105 A.2d 894
H. BEHLEN & BROS., INC., ET AL., PLAINTIFFS-APPELLANTS,
v.
MAYOR AND COUNCIL OF THE TOWN OF KEARNY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 10, 1954.
Decided June 4, 1954.
*32 Before Judges CLAPP, FREUND and SCHETTINO.
Mr. William W. Wimmer argued the cause for plaintiffs-appellants (Messrs. Wimmer & Chasnoff, attorneys).
Mr. Robert J. McCurrie argued the cause for defendant-respondent.
*33 The opinion of the court was delivered by SCHETTINO, J.S.C. (temporarily assigned).
These are three cases involving the validity of provisions of the zoning ordinance of the Town of Kearny. Plaintiffs are owners or occupants of property rezoned by amendment. The sole defendant is the municipality. These appeals are from judgments for defendant.
Prior to amendment an area of some 6,000 to 7,000 feet along the easterly side of Schuyler Avenue was zoned for light industry to a depth of some 500 feet, and beyond that depth for heavy industry. The amendment extended the light industry in depth by an additional 700 feet. By subsequent amendment the property of Joseph Davis Plastics Co. within that additional 700-feet extension was reclassified for heavy industry.
Plaintiffs challenge the treatment of the Davis property as discriminatory and focus a like attack upon the zoning for heavy industry of the property of E.I. DuPont De Nemours Co. and of lands between Harrison Avenue and the Newark Branch of the Erie Railroad, which properties abut the light industry zone on the north and south respectively.

I.
Plaintiffs seek to set aside the amendatory ordinance as arbitrary insofar as their properties are concerned, and alternatively appear to seek to bring the three parcels referred to above into the classification of light industry, except a portion of the DuPont property which had been zoned for heavy industry prior to the amendment.
These alternative demands require separate consideration. Where a plaintiff's property is treated discriminatorily from other property in the area, the ordinance may be set aside as to plaintiff's property, but where plaintiff's property is properly zoned and the discrimination is confined to a relatively small area owned by another, the remedy is not to set aside the entire zone but rather to set aside the preferential treatment of the favored parcel or parcels. Cf. *34 Town of Marblehead vs. Rosenthal, 316 Mass. 124, 126, 55 N.E.2d 13 (Sup. Jud. Ct. 1944).
It cannot be assumed that the municipality would not have adopted the zone if it knew that its treatment of a small segment was invalid. Hence the inquiry must be: (1) whether the zoning can be said to be arbitrary from the standpoint of the treatment of plaintiffs' properties, and (2) whether, if that treatment is unassailable upon that inquiry, the entire rezoning is still so infected by preferential treatment of others as to justify condemnation of the entire scheme as violative of the statutory mandate for uniformity. R.S. 40:55-31.
The area rezoned for light industry beyond the mentioned depth of 500 feet is bounded on the north by the New York and Greenwood Lake Branch of the Erie Railroad and on the south by the Newark Branch of the Erie Railroad. The easterly line of the zone abuts the D.L. & W. Railroad. The area to the west of Schuyler is zoned essentially for residential use, and in fact the use thereof is predominantly so. The first 500 feet of depth on the easterly side of Schuyler Avenue has been zoned for light industry since 1922 and no attack is made upon the propriety of that continued treatment. With respect to the remaining depth of 700 feet rezoned for light industry, the record establishes a considered effort to protect the residential area from the well-known harmful influences and effects of heavy industry. The rezoning was the result of lengthy study by experts in planning and represents the judgment of the planning board and the governing body. Upon examination of the evidence we find no factual basis for judicial intervention. Yanow v. Seven Oaks Park, Inc., 11 N.J. 341 (1953); Fischer v. Township of Bedminster, 11 N.J. 194 (1952).
We turn, then, to the second aspect on this branch of the case, namely, whether there is demonstrated such preferential treatment of the properties of others as to invalidate the entire scheme.
The Du Pont property and the lands between Harrison Avenue and the Newark Branch of the Erie Railroad are *35 readily distinguishable from the rezoned area. The Du Pont property lies to the north of the New York and Greenwood Lake Branch of the Erie Railroad. The testimony describes the property as some 40 to 50 feet below the level of Schuyler Avenue. There is a preponderance of industry and business west of Schuyler Avenue opposite the Du Pont property. On the north this property abuts a cemetery. The legislative determination that this property justifiably should receive different classification as to use cannot be said to be arbitrary or capricious.
The area between Harrison Avenue and the Newark Branch of the Erie Railroad likewise appears reasonably distinguishable from the lands within the new light industry zone. On the north it adjoins the railroad and on the south it faces lands across Harrison Avenue devoted practically exclusively to heavy type industry and was always so zoned. The westerly side of this area is zoned for multi-family housing up to Schuyler Avenue and the use of the lands to the west of Schuyler Avenue (located in another municipality) is not disclosed by the record.
The Davis property might be said, on the record before us, to be treated specially. Although the frontage is some 20 to 25 feet below the level of Schuyler Avenue, yet the depth beyond the first 400 or so feet is apparently indistinguishable from the remaining lands on both sides of it in the zone. That depth is in fact used for heavy industry, but this circumstance, although entitling the owner to continue a nonconforming use, would not warrant the distinctly different right to be zoned for heavy industry. We do not question the status of affected property owners to challenge this treatment as a spot zoning. Borough of Cresskill v. Borough of Dumont, 15 N.J. 238 (1954); Conlon v. Board of Public Works, Paterson, 11 N.J. 363 (1953); Menges v. Township of Bernards, 4 N.J. 556 (1950). However, as indicated above, such discrimination, affecting perhaps some 500 feet out of a total of 6,000 to 7,000 feet, cannot vitiate the entire zoning plan.
*36 Nor do we adjudge the invalidity of the treatment of the Davis property. The owner of that property is not a party to these proceedings and its rights cannot be effectively determined without an opportunity to be heard, when the essence of the attack is addressed to the reasonableness in fact of the ordinance in its application to the specific property, as distinguished from a challenge to a provision of an ordinance which is of general application within a zone.
Hence, the judgments below are affirmed insofar as they sustain the zoning but without prejudice to the right of any interested party to maintain proceedings addressed to the validity of the zoning as it relates to the Davis property. Our expressions, based as they are upon a record made without notice to the owner of the Davis property, are not intended to forecast the result of such future litigation, if there should be any.

II.
Plaintiffs also challenge the validity of provisions of the zoning ordinance dealing with alteration, reconstruction and restoration of nonconforming uses.
Section I of Article XI provides in part:
"A lawful building arranged, designed or devoted to a Non-Conforming Use may not be reconstructed or structurally altered to an extent exceeding in aggregate cost twenty-five per cent (25%) of the fair value of the building, provided there is no enlargement of the outside dimensions of the building, unless the use of such building is changed to a conforming use, except that in an M-1 District (Restricted Manufacturing District), a non-conforming industrial building or use established as a conforming use under the Zoning Ordinance in effect prior to December 29, 1952, may be extended, within the same Lot as such Lot existed on December 29, 1952, over an area equal to not more than fifty percent (50%) of that covered by such building or use on said date. Such Non-Conforming Use may be hereafter extended throughout any part of a building which was manifestly arranged or designed for such use at the time of the enactment of this Ordinance, provided, however, that a certificate of occupancy be first obtained for such an extension of use."
*37 Section II of Article XI provides:
"Nothing in this Ordinance shall prevent the restoration of a building destroyed less than seventy-five per cent (75%) of its replacement value, exclusive of the foundations, by fire, explosion, act of God, or act of the public enemy, subsequent to the passage of this Ordinance, or shall prevent the continuance of the use of such building or part thereof as restored, as such use existed at the time of such destruction. This shall not prevent the reconstruction of a non-conforming one-family or two-family dwelling in a Residence District even though completely destroyed. Nothing in this Ordinance shall prevent the restoration of a wall or other part of any building declared unsafe by the Building Inspector."
Three separate situations apparently comprehended by the quoted provisions are questioned: (1) reconstruction or structural alterations where there has been no destruction, the limitation being 25% of the fair value of the building; (2) extension of nonconforming uses in a restricted manufacturing district ("light industry" as that term has been used in this opinion) which is authorized to the extent of 50% of that area covered by the nonconforming building or use, and (3) restoration of a building destroyed to an extent less than 75% of its replacement value, except as to residential property with which we are not here concerned.
R.S. 40:55-48 provides:
"Any nonconforming use or structure existing at the time of the passage of an ordinance may be continued upon the lot or in the building so occupied and any such structure may be restored or repaired in the event of partial destruction thereof."
This specific treatment of nonconforming uses would seem to prevail over any wider authority which might otherwise be thought to exist by virtue of the reference to "reconstruction, alteration, repair" in the general provisions of R.S. 40:55-31.
Plaintiffs are properly concerned with these provisions insofar as they relate to the nonconforming use of other properties within the same zone, and this must certainly be true with respect to property of one plaintiff which abuts property upon which heavy industry exists as a nonconforming *38 use. Speakman v. Mayor and Council of North Plainfield, 8 N.J. 250 (1951).
With respect to the authorization for reconstruction or structural alteration where there has been no destruction, we do not believe the Legislature intended by the quoted statutory provision to preclude reconstruction or alteration which prudent management or safety may require in the ordinary course of events, so long as the nonconforming use itself is not altered or enlarged. Lane v. Bigelow, 135 N.J.L. 195 (E. & A. 1947); Home Fuel Oil Co. of Ridgewood v. Board of Adjustment, Glen Rock, 5 N.J. Super. 63 (App. Div. 1949). Any other view would be tantamount to a finding that the Legislature intended that, except for ordinary repairs, a nonconforming structure must be permitted to become antiquated or to disintegrate into a state of collapse. However, we do not pass upon the matter. Whether this authorization as to reconstruction or structural authorization is valid is not before us, since plaintiffs cannot complain that the nonconforming use of another's property is unduly restricted. Rowland v. City of Racine, 223 Wis. 488, 493, 271 N.W. 36 (Sup. Ct. 1937).
The authorization of the extension of a nonconforming building or use by the expansion of 50% of the area covered by it seems to be without legislative warrant. R.S. 40:55-48 has been consistently construed to prevent an enlargement except of course pursuant to provisions of the statute dealing with variances. Speakman v. Mayor and Council of North Plainfield, 8 N.J. 250 (1951); Monmouth Lumber Co. v. Ocean Township, 9 N.J. 64 (1952); Struyk v. Samuel Braen's Sons, 17 N.J. Super. 1 (App. Div. 1951), affirmed on opinion below 9 N.J. 294 (1952); Adler v. Department of Parks, Irvington, 20 N.J. Super. 240 (App. Div. 1952). However, again we do not pass upon the point. It may be that plaintiffs have received favorable consideration that the town was not compelled to give them. But in such a matter, they cannot complain.
The provision of the ordinance relating to restoration in the event of destruction limits the right to restore to cases *39 of destruction less than 75% of replacement value. Plaintiffs contend that this percentage exceeds the partial destruction contemplated by the statute and cites D'Agostino v. Jaguar Realty Co., 22 N.J. Super. 74 (Ch. Div. 1952), in which the view is expressed, by way of dictum, that the authorization is confined to repairs and alterations of "a comparatively minor character." We cannot accept so restricted an interpretation of "partial destruction." Nor can we subscribe to a percentage determination by ordinance since, manifestly, the Legislature could itself have made a determination in such terms had it contemplated a rigid formula of that kind, and surely the Legislature did not intend its provision to permit, or have, varying meanings in different municipalities. What constitutes "partial destruction" must depend upon the facts of each case and, although some guiding principles may perhaps be judicially formulated, we should not attempt to do so when the question is presented as an abstraction. We go no further than to hold that a percentage delineation by ordinance is not authorized.
The judgments are affirmed with the modifications expressed above.