728 A.2d 849 (1999)
321 N.J. Super. 261
ATLANTIC CONTAINER, INC., Plaintiff-Respondent,
v.
TOWNSHIP OF EAGLESWOOD PLANNING BOARD, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted April 19, 1999.
Decided May 18, 1999.
*850 Russell P. Cherkos, attorney for defendant-appellant.
Schuman, Butz & Babcock, attorneys for plaintiff-respondent (Thomas P. Butz, of counsel and on the brief).
Before Judges PETRELLA, D'ANNUNZIO and COLLESTER.
The opinion of the court was delivered by PETRELLA, P.J.A.D.
The Planning Board of the Township of Eagleswood (Planning Board) appeals from the Law Division's determination that the Municipal Land Use Ordinance of the Township *851 of Eagleswood (Township) allows as a permitted use within a "limited manufacturing zone" a proposed materials recovery facility. Atlantic Containers, Inc. (Atlantic) sought an interpretation of the zoning ordinance from the Planning Board in order to avoid the necessity of obtaining a use variance for its proposed facility. By a 5-4 vote the Planning Board deemed the materials recovery facility to be dissimilar and inconsistent with any of the listed uses in the ordinance relating to the limited manufacturing zone (LM zone). The Planning Board then determined that consideration of the use variance was to be decided at a later date. On its appeal in a prerogative writ action, Atlantic obtained a ruling by the Law Division in a reported opinion which effectively reversed the Planning Board and interpreted the municipal ordinance as allowing the proposed materials recovery facility without the necessity of a use variance, but subject to site plan review and design waivers. 312 N.J.Super. 213, 224, 711 A.2d 419 (Law Div. 1997).
The Planning Board now appeals, arguing that the Law Division judge erred in applying an overbroad definition of the word "similar" in its interpretation of the Township's zoning ordinance.
Atlantic proposed to construct and operate a materials recovery facility on a parcel of vacant land it owned in the Township in the LM zone, and designated as lot 9, block 38 on the municipal tax maps. At one time the property had been used for the manufacture of fiberglass swimming pools and storage of construction equipment and residual supplies.
Atlantic submitted its application to the Planning Board for a site plan approval, variances and design waivers under N.J.S.A. 40:55D-70(b), (c) and (d), and for an interpretation of the zoning ordinance. The plan included construction of a facility in three phases. The first phase was the construction of a six-foot high chain link fence with main access driveway from Stafford Forge Road and use of the property for storage of construction equipment, refuse collection equipment and containers. The second phase involved construction of a 240 square foot office building and a 2,500 square foot garage for storage, maintenance and parking of vehicles and equipment. In the third phase a 9,000 square foot recycling material recovery facility was to be erected.
The president and principal shareholder of Atlantic, Michael McClellan, testified before the Planning Board that construction debris containers would be brought to the facility containing primarily, but not limited to, "concrete, wood, roofing shingles, [and] metals." Another representative of Atlantic indicated that other items such as wiring and copper pipes would also be handled at the facility. It was anticipated that the facility would be licensed to handle up to 100 tons per day. Atlantic's representative compared the proposed facility to another use in the LM zone, known as the Kummings project, a wood converting process that had been approved by a previous planning board. He anticipated that the truck traffic at the proposed materials recovery facility would be approximately the same number of trucks as for the Kummings project, about two trucks, ten times daily.
The operation of the proposed facility was described as dumping construction debris on the ground, sorting it, and putting the "reusable material" into separate containers which would then be processed and taken to a recycling center to be available for manufacturing use or sale to a third-party. The Law Division judge notes: "The remainder would be taken to a dump." The separating process would be done manually with the aid of a front end loader to move the waste around the enclosed materials recovery facility.[1]
*852 The floor of the enclosed facility was to be concrete with floor drains connected to a 6,000 gallon closed tank to handle any ground water waste. It was anticipated that hazardous waste would not come into the facility because there was supposed to be source separation for all hazardous waste at the various construction sites. It was also indicated that approvals would be needed from the county in accordance with the Ocean County District Solid Waste Management Plan, as well as approvals and permits from the New Jersey Department of Environmental Protection (DEP).
In the "Kummings" matter the previous board had found that the storage and processing of the recyclable material, wood, was a permitted use in the LM zone because it was similar to and not inconsistent with the uses expressly permitted in the zone. More specifically, the process involved there was the bringing of tree stumps onto the site which were converted by a power grinder into wood chips or mulch for use in gardening and landscaping.
On Atlantic's challenge to the Planning Board's interpretation of the ordinance, the Law Division judge concluded, without reference to any specific category or provision in the LM zone portion of the zoning ordinance, that Atlantic's proposed use was similar to and not inconsistent with other uses expressly permitted in the zone. The judge opined:
It appears that the proposed reclamation use is similar to and not inconsistent with the uses permitted in the zone. It also would be appropriate to characterize it as an "industrial use" given the many other uses allowed in the zone. Several of them involve activities which would create more objectionable results then the mere separating of construction materials or other similar substances. Thus some of the fabrication processes could involve as much as or more noise, fumes, emissions and traffic than the plaintiff's proposed facility. [312 N.J.Super. at 222, 711 A.2d 419 (emphasis added).]
Significantly, the judge did not refer to any permitted use that was similar and not inconsistent with the proposed materials recovery facility.
Section 103-12(E)(10) contains a list of prohibited uses in the LM zone.[2] In addition, section 103-12(F) contains a list of performance standards that permitted uses must satisfy. They are generally categorized as controls for (1) smoke; (2) dust, dirt, fly ash, vapors and gases; (3) noise; (4) odor; (5) glare or heat; (6) vibration; (7) radioactivity or electrical disturbance; and (8) outdoor storage and waste disposal.
The Planning Board's June 5 resolution rejecting Atlantic's interpretation of the ordinance stated in pertinent part:
6. The Board finds that Section 103-12a(1)-(9) are the permitted principal uses within the zone and that Section 103-12(8) also permits any industrial use not inconsistent with the above listed uses.
7. The Board finds that all listed uses involve a process of manufacturing or fabrication by which some external process is applied to raw materials with the result different in form or character than that *853 originally in existence. The Board finds that manufacturing in the sense that the term is used was the thrust of the intended use within this particular zone and that the Applicants' proposal is not a manufacturing process but simply a transfer station for disposal of solid waste.
8. The Board, therefore, finds that this proposed use is not industrial in character and is not substantially similar to the uses listed within the ordinance and that it is inconsistent with the uses listed within the ordinance.
9. The Board finds that it was not the intention of the drafters of the ordinance to permit solid waste disposal facilities or transfer facilities and that the use is therefore not permitted, and the use is also prohibited by Section 103-12-E(10)(r) as a Reclaiming Plant.
10. The Board further reviewed A-1 and A-2 and had an argument from the applicant concerning the consistency of the proposed use with the "Kummings" application which was determined to be permitted use within the zone by the Zoning Board of Adjustment. The Board finds that the "Kummings" application included a manufacturing process whereby materials were converted from stumps to a usable product, namely mulch or woodchips and, therefore, the proposed use found to be permitted in the "Kummings" application, is not the same use proposed in this application.
Section 103-12(A) of the Township's ordinance includes a litany of specific permitted uses[3] in the "Limited Manufacturing Zone," and even permits uses in that zone that are not specifically provided for so long as the "industrial use [is] similar and not inconsistent with the above-listed uses." Thus, if the use is not specifically listed, then, the use in order to be permitted without the necessity of a variance, must be similar to and not inconsistent with those listed for this particular zone.
Of course, interpretation of an ordinance is essentially a legal issue, Wyzykowski v. Rizas, 132 N.J. 509, 518, 626 A.2d 406 (1993); Pullen v. Tp. of South Plainfield, 291 N.J.Super. 1, 6, 676 A.2d 1095 (App.Div. 1996); Jantausch v. Borough of Verona, 41 N.J.Super. 89, 96, 124 A.2d 14 (Law Div. 1956), aff'd, 24 N.J. 326, 131 A.2d 881 (1957). As such, the conclusions of the agency, as well as the Law Division, are not entitled to any particular deference. See, e.g., Mayflower Securities Co., Inc. v. Bureau of Securities, 64 N.J. 85, 92-93, 312 A.2d 497 (1973); Dumont Lowden, Inc. v. Hansen, 38 N.J. 49, 52, 183 A.2d 16 (1962); Cherney v. Matawan Borough Zoning Board of Adjustment, 221 N.J.Super. 141, 144-145, 534 A.2d 41 (App. Div.1987). When discretionary acts of a *854 board are involved they carry a presumption of validity, and are reviewed under the standard of whether they are arbitrary, capricious or unreasonable. Smart SMR of New York, Inc. v. Fair Lawn Board of Adjustment, 152 N.J. 309, 327, 704 A.2d 1271 (1998); Kramer v. Sea Girt Board of Adjustment, 45 N.J. 268, 285, 212 A.2d 153 (1965); Cherney v. Matawan Borough Zoning Board of Adjustment, supra (221 N.J.Super. at 144-145, 534 A.2d 41).
In construing ordinances, the court attempts to determine legislative intent along the same lines as in interpreting and construing statutes. Of course, the Planning Board has input into the adoption of a master plan, N.J.S.A. 40:55D-28, as well as the adoption or amendment of a zoning ordinance, N.J.S.A. 40:55D-64. Thus, the Planning Board can be expected to have more than a passing knowledge of the legislative intent at the time of the enactment. Cf. New Jersey Pharmaceutical Ass'n v. Furman, 33 N.J. 121, 130, 162 A.2d 839 (1960); 2A Norman J. Singer, Sutherland Statutory Construction § 48.03 (5th ed.1992). The general principle is that ordinances should be liberally construed in favor of the municipality. L & L Clinics, Inc. v. Town of Irvington, 189 N.J.Super. 332, 336, 460 A.2d 152 (App.Div. 1983), certif. denied, 94 N.J. 540, 468 A.2d 191 (1983). See N.J. Const. art. IV, § 7, ¶ 11.
After concluding that the ordinance was intended to create a "light industrial zone," the Law Division judge determined that the proposed materials recovery facility was an "industrial use" and was similar and not inconsistent with the other uses permitted in the zone. In this respect the judge erred in finding an industrial use without specifying how the provision of the ordinance which required that the use be similar and not inconsistent with the uses listed in subparagraphs one through seven of section 103-12(A) was met. The judge also focused on the prohibition of "rubber treatment or reclaiming plant" in the ordinance and limited that prohibition solely to "rubber treatment" plants. 312 N.J.Super. at 224, 711 A.2d 419. In large part he relied on a ruling by the Planning Board's attorney that all reclaiming-type plants were not necessarily prohibited, presumably because the "Kummings" use had been approved. Nevertheless, whether the attorney's interpretation was correct or not, the Law Division judge was still required to apply the ordinance as written to the use presented.[4]
A case which is instructive is Piaget-Del Corp. v. Kulik, 133 N.J.L. 485, 45 A.2d 125 (Sup.Ct.1945), petition denied, 134 N.J.L. 147, 46 A.2d 379 (Sup.Ct.1946), where our former Supreme Court was called upon to construe a zoning ordinance which prohibited the use of buildings or premises for certain "trades, industries or uses," as well as "Merry-go-Rounds, Ferris Wheels or similar amusement" within business districts. Id. at 486, 45 A.2d 125. The court held that a proposed skating rink was not included in the ban of similar amusement and the phrase "or similar amusement" could not be construed to include it. The court compared the proposed use with those specified in the ordinance and noted that "the use of the qualifying adjective `similar' is indicative of a purpose to limit the operation of the general words to amusements of a kind and character like those already specified." Ibid. The court found "no resemblance between those enumerated in the zoning regulation and the proposed use except they take the general category of `amusements.'" Ibid. It was noted that "merry-go-rounds and ferris *855 wheels are not only of a radically different nature, but their operation is much more public than the one suggested here, and not in keeping with the normal uses assigned to a business district, while a housed skating rink is not a discordant use." Id. at 486-487, 45 A.2d 125.
In Township of Fairfield v. Likanchuk's, Inc., 274 N.J.Super. 320, 644 A.2d 120 (App. Div.1994), we concluded that a proposed concrete/asphalt recycling center was not a permitted continuation of the nonconforming automobile salvage yard, described by the owner as a "junkyard," in a business/light industry zone. We observed:
Clearly a salvage yard for automobile parts is very different from a recycling center. Even if there were some doubt as to this point, that doubt must be resolved against defendant [the proponent of the recycling center]. [Id. at 331, 644 A.2d 120 (citations omitted).]
In Likanchuk's, Inc., the proponents of the proposed recycling center argued in the alternative that the proposed concrete/asphalt recycling center was a permitted use in the business/light industry zone because the ordinance allowed "building materials, supply houses, and distribution facilities." Ibid. We rejected that comparison as "patently meritless" because the intent of the ordinance was clearly expressed to permit retail and wholesale building supply houses, a use fundamentally different from the operation of a recycling center. There was no reasonable question as to the construction of the ordinance; no "permitted use in the pertinent zone could be rationally defined as including asphalt/concrete recycling centers." Ibid.
In Likanchuk's, Inc. we considered the proposed use and compared it with the existing nonconforming use and the permitted "retail and wholesale building supply houses," to determine if reasonable similarities could be found. Here, Atlantic did not advance any of the permitted uses provided for in the ordinance for comparison to its proposed operation, relying merely on its claim that the previously permitted Kummings use dictated the result. Out of the many permitted uses, the most the judge could say was that: "It appears that the proposed reclamation use is similar to and not inconsistent with the uses permitted in the zone." 312 N.J.Super. at 224, 711 A.2d 419. The Law Division judge's somewhat speculative comparison with uses which create perhaps more objectionable results by noise, fumes, emissions and traffic is similar to the comparisons rejected in Piaget-Del Corp., supra, (133 N.J.L. at 487, 45 A.2d 125), which were "wholly artificial standards not found in the regulation itself." As we view it, fumes and noise are merely by-products of a particular use. Moreover, such impacts would appear to be more appropriate to other site plan approval issues,[5] rather than the interpretation of an ordinance provision.
Indeed, the record is essentially silent on the impact of truck traffic, noise pollution and the like because the Planning Board attorney had ruled that those issues were not involved in the issue of the legal interpretation of the ordinance. Nonetheless, the Law Division judge, on a somewhat meager record, found that Atlantic's "use is a relatively innocuous and quiescent operation." He then stated that there was no evidence of any potential ground water, airbourne, or noise pollution nor truck traffic even though the record did not substantially address those issues. The record is inadequate to support those findings. We only note in passing that the dumping of construction debris as proposed by Atlantic would presumably be associated with some degree of noise and dust, even if done within the confines of an enclosed facility.
Moreover, even if the judge could properly have considered such matters, they do not change the operation or use of the facility. Cf. Berdan v. City of Paterson, 1 N.J. 199, 204, 62 A.2d 680 (1948) ("The mere fact that a prohibited use is no more objectionable than other uses in the district does not justify its allowance and municipal sanction *856 allowed on that basis is arbitrary and capricious."). The judge's conclusory findings are no substitute for the findings in paragraph 8 of the Planning Board's resolution which the judge said did "not explain why the Board found the use was neither industrial nor substantially similar to the permitted uses." 312 N.J.Super. at 223, 711 A.2d 419.
We do agree with the Law Division judge that the example of the Kummings case is hardly dispositive because the proposed materials recycling facility must "stand alone on its own merits as a use similar to the other industrial uses permitted in the zone." 312 N.J.Super. at 224, 711 A.2d 419. Nonetheless, the judge refers to facts peculiar to the Kummings case with respect to truck traffic that would be associated with Atlantic's proposed facility and states: "There is no reason to believe that it will be any greater than produced by many of the specifically authorized activities." 312 N.J.Super. at 223, 711 A.2d 419. The basis for that statement seems to be the comment by a representative of Atlantic at the public hearing that the truck traffic would be "similar" to that in the "Kummings" project. This is, of course, aside from the fact that the truck traffic is not a use, but a by-product of the use.
Essentially then, the Law Division judge made the determination that the intent of the drafters was to create a light industrial zone, and then concluded that the proposed materials recovery facility was a light industrial use. In this regard he merely substituted his view of the ordinance for that of the Planning Board, and failed to sufficiently analyze section 103-12(A)(8) of the Township's ordinance and specifically apply its requirements that "any industrial use [be] similar and not inconsistent with the above-listed uses" in the applicable section of the ordinance.
There is no question that the exclusion of certain uses from an industrial district is a matter within the sound discretion of the municipal legislative body. Franklin Contracting Co. v. Deter, 99 N.J.L. 22, 24-25, 122 A. 600 (Sup.Ct.1923). Moreover, a municipality may distinguish between light and heavy industry, and may permit one and prohibit the other. See, e.g., Duffcon Concrete Products, Inc, v. Borough of Cresskill, 1 N.J. 509, 515, 64 A.2d 347 (1949); H. Behlen & Bros., Inc. v. Mayor and Council of Town of Kearny, 31 N.J.Super. 30, 33, 105 A.2d 894 (App.Div.1954); Newark Milk & Cream Co. v. Parsippany-Troy Hills Tp., 47 N.J.Super. 306, 328, 135 A.2d 682 (Law Div.1957).
We are satisfied that the drafters of the ordinance intended a limited industrial zone which allowed some, but not all, types of industrial or manufacturing activity. In addition, the permitted uses in this zone are further delineated as to the general nature by prescribed performance standards (section 103-12(F)) which control such impacts as smoke, dust, and noise, and other specified standards, including "outdoor storage and waste disposal." The ordinance's performance standards and the impacts they restrict strengthen the Planning Board's contention that the intention of the drafters of the land use ordinance was to create a limited industrial zone which is essentially a limited light industrial zone. Under these circumstances, not all industrial uses are permitted in this zone. Even if the proposed materials recovery facility were considered a light industrial use, that alone would not automatically allow entrance into this limited industrial zone. The use in question would be permitted only as long as it is "similar and not inconsistent with the... listed uses." We have reviewed the list of permitted uses and compared those uses with the proposal submitted by Atlantic. It appears that a common thread that runs through the listed permitted uses is that those industries are involved in a process of manufacturing, fabrication or production of useful goods on the site, while the proposed use by Atlantic is nothing more than the sorting and reshipment of solid waste.
The decision of the Law Division judge is reversed and the determination of the Planning Board is reinstated.
NOTES
[1] The exact scope of a "materials recovery facility" is not clear. By way of illustration only, N.J.A.C. 7:26-1.4 defines one type of "materials recovery facility" as:

A solid waste facility such as a transfer station which is primarily designed, operated and permitted to process a nonhazardous solid waste stream by utilizing manual and/or mechanical methods to separate from the incoming waste stream categories of useful materials which are then returned to the economic mainstream in the form of raw materials or product of reuse.
A representative of Atlantic stated at the hearing that the proposed materials recovery facility would not qualify as a transfer station as defined by certain DEP classifications.
[2] The provisions for the LM zone in no event shall be interpreted to permit any of the following uses:

(a) Abbatoir.
(b) Acetylene gas manufacture and/or storage.
(c) Acid manufacturing (hydrochloric, nitric, picric, sulfuric, sulfurous, carbolic).
(d) Ammonia, bleaching powder or chlorine manufacture.
(e) Arsenal.
(f) Celluloid manufacture.
(g) Cement, lime, gypsum or plaster of paris manufacture.
(h) Creosote treatment or manufacture.
(i) Dead animal and offal reduction.
(j) Explosives, fireworks and gunpowder manufacture or storage.
(k) Fat rendering.
(l) Forge plant.
(m) Incineration, reduction, storage or dumping of slaughterhouse refuse, rancid fats, garbage, dead animals or offal.
(n) Oilcloth or linoleum manufacture.
(o) Ore reduction of any kind.
(p) Petroleum or kerosene refining, distillation or derivation of by-products and/or storage.
(q) Power forge (riveting, hammering, punching, chipping, drawing, rolling or tumbling of iron, steel, brass or copper, except as a necessary incident of manufacturing of which these processes form a minor part and which are carried on without objectionable noise outside the plant).
(r) Rubber treatment or reclaiming plant.
[3] Permitted uses in the ordinance for the LM zone are listed in section 103-12(A) as follows:

1. Manufacturing of light machinery, comprising any of the following: small machines or machine parts, cash registers, sewing machines and typewriters, calculators and other office machines.
2. Fabrication of metal products, comprising but not limited to any of the following: baby carriages, bicycles and other vehicles, metal foil, tin, aluminum, gold, etc., metal furniture, musical instruments, sheet metal products and toys.
3. Fabrication of paper products, comprising any of the following: bags, bookbinding, boxes and packaging materials, office supplies and toys.
4. Fabrication of wood products, comprising but not limited to any of the following: boats, cabinets and woodworking, furniture and toys.
5. Food and associated industries, comprising any of the following: bakeries, bottling of food and beverages, food and cereal mixing and milling, food processing, sundry food manufacturing, ice cream manufacturing and manufacturing of spirituous liquor.
6. Laboratories, comprising any of the following: biological, chemical, dental, electronic and pharmaceutical.
7. Other permissible industry, comprising any of the following: brush and broom manufacturing, electric light and power and other utility company installations, electronic products manufacturing, farm machinery, sales and service, jewelry manufacturing, commercial laundering and cleaning plants, leather goods manufacturing (except curing, tanning and finishing of hides), pharmaceutical products, photo-finishing, pottery and ceramic products manufacturing, printing plants, sporting goods manufacturing and thread and yarn manufacturing.
8. Any industrial use similar and not inconsistent with the above-listed uses.
9. Industrial parks containing any of the above uses.
[emphasis added.]
[4] The Planning Board attorney stated at the hearing in the Law Division that the Planning Board voted to specifically include the phrase "and the use is also prohibited by Section 103-12E(10)(r) as a Reclaiming Plant" at the end of the ninth finding in the resolution.

The record below is inadequate for us to determine the legislative intent behind the particular prohibition. In any event, regardless of the interpretation, the outcome would be the same. However, we note that under general statutory construction:
[o]rdinarily, the word "or" in a statute is to be considered a disjunctive particle indicating an alternative. There has been, however, laxity in the use of the words "or" and the conjunctive "and," so that the words are interchangeable and that one may be substituted for the other, if to do so is inconsistent with legislative intent.
[Murphy v. Zink, 136 N.J.L. 235, 239, 54 A.2d 250 (Sup.Ct.1947), aff'd, 136 N.J.L. 635, 57 A.2d 388 (E. & A.1948) (citing 2 Sutherland Statutory Construction 451 (3d ed.)).]
[5] Section 103-12(F) states that such impacts as smoke, dust and noise are to be considered for site plan approval and a zoning permit.