895 A.2d 1192

WYNFIELD CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, INDIVIDUALLY AND ON BEHALF OF THE CLASS OF ALL OTHERS SIMILARLY SITUATED, PLAINTIFF–APPELLANT/CROSS–RESPONDENT, v. KILLAM ASSOCIATES, DEFENDANT–RESPONDENT/CROSS–APPELLANT, AND HAMBURG BOROUGH AND SUSSEX COUNTY CONSTRUCTION BOARD OF APPEALS, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued April 5, 2006—Decided April 24, 2006.

Before Judges WEFING, WECKER and FUENTES.

*Anthony J. Sylvester* argued the cause for appellant/cross-respondent (*Riker Danzig Scherer Hyland & Perretti,* attorneys; *Mr. Sylvester,* of counsel; *Caroline A. Antonacci,* on the brief).

*James J. Shrager* argued the cause for respondent/cross-appellant (*Norris, McLaughlin & Marcus,* attorneys; *Mr. Shrager,* of counsel; *Padraig P. Flanagan and Janine N. Matton,* on the brief).

The opinion of the court was delivered by

FUENTES, J.A.D.

In this suit alleging improper billing brought by a developer against the municipally-retained engineering firm that oversaw its project, plaintiff, Wynfield Corporation, appeals from the Law Division's denial of its motions for class certification, for partial summary judgment on the class action counts in its complaint, and for counsel fees. Plaintiff contends that the trial court erred in concluding that the Superior Court was not the better forum for hearing the claims of similarly-situated plaintiffs, and that an award of counsel fees was not warranted where plaintiff's lawsuit

had not resulted in a tangible economic benefit to similarly-situated non-litigants.

In its cross-appeal, defendant Killam Associates (now known as Hatch Mott MacDonald I & E) asserts that the trial court erred in interpreting *N.J.S.A.* 40:55D–53.2(a), the statute governing payment to professionals for services rendered to municipalities, so as to preclude separate billing for secretarial expenses.

After considering the record before us, and in light of prevailing legal standards, we affirm. We hold that the statutory remedy set forth in *N.J.S.A.* 40:55D–53.2(a) for such billing disputes provides the exclusive remedy for plaintiff's action. We will consider and analyze the legal issues presented in the context of the following factual record developed before the trial court.

# I

## A

### *Administrative Review*

In late 2000 and early 2001, plaintiff Wynfield Corporation, a developer, was in the process of building an eleven-house subdivision in Hamburg Borough. Defendant Killam Associates, an outside engineering firm retained by the Borough in both 2000 and 2001, was responsible for, among other things, reviewing the plans for the subdivision and performing periodic site inspections. The professional fees charged by defendant for these services were passed on to plaintiff and deducted from the escrow account plaintiff was required to maintain under *N.J.S.A.* 40:55D–53.2(b), the statute governing payment to professionals for services rendered to municipalities.

In accordance with *N.J.S.A.* 40:55D–53.2(a), defendant submitted a schedule of its "professional charges" at the time it applied to serve as the Borough's engineering consultant for calendar year 2000. In this schedule, "[s]ecretarial [p]ersonnel" was identified as one of the seven disciplines, which also included engineers,

designers, geologists and surveyors, into which defendant's support staff was divided. Secretarial time was to be billed out at $35.00 to $56.00 per hour. The schedule did not contain any other miscellaneous charges.

In the "Hourly Rate Schedule" furnished by defendant in conjunction with its 2001 application to the Borough, defendant again included "secretarial personnel" as one of eight separate disciplines into which its support staff was divided. This schedule provided for secretarial time to be billed out at a flat rate of $50.00 per hour. The 2001 schedule also included a new section entitled "Expenses," wherein defendant detailed the additional charges that would be imposed for, among other things, mileage, photocopies, postal services, office computers and fax transmittals.

Between August 2000 and March 2001, defendant submitted seven invoices to the Borough for engineering services in connection with plaintiff's subdivision. Defendant also mailed "courtesy" copies of these invoices to plaintiff. Contrary to *N.J.S.A.* 40:55D–53.2(c), these invoices did not identify: (1) the type of service provided; (2) the service provider or his or her hourly rate; (3) the date of the service; or (4) the hours spent to the nearest quarter hour. The invoices merely identified the total amount due for the time collectively spent by unidentified "Professional Personnel," plus an amount due for "Reimbursable Expenses," which typically included printing, postage and mileage. While defendant did supply some backup information to the Borough alone on separate sheets, this information was limited to the date of the service, the name of the service provider, the time spent to the nearest half hour, the provider's hourly rate, and the name of the individual who incurred the mileage charges.

Plaintiff began disputing defendant's bills after its November 2000 invoice proved to be significantly higher than all prior invoices. Over the next several months, plaintiff secured copies of defendant's backup sheets from the Borough, as well as some other backup information, and determined that, between August

2000 and March 2001, it had been billed $1,429.66 for secretarial services; $412.75 for preparation of an unnecessary site map; $859.28 for project coordination time; $660.93 for time spent responding to billing inquiries; and an unspecified amount for travel time.

Believing these charges to be unauthorized under *N.J.S.A.* 40:55D–53.2(a), plaintiff brought its complaints to the attention of the Borough Council, in accordance with the procedure set forth in *N.J.S.A.* 40:55D–53.2a(a) for addressing billing disputes. When the matter was not resolved to plaintiff's satisfaction, plaintiff filed an appeal with the Sussex County Construction Board of Appeals (the "Board") on March 2, 2001, in accordance with the procedure set forth in the statute.

A hearing was held before the Board on August 9, 2001. Notably, counsel for the Borough declined to participate, deferring instead to defendant's counsel. At this hearing, plaintiff's president, Robert Bracken, identified the objectionable invoices, and the specific amounts in dispute. He noted that he was unable to identify the travel time for which he was billed, because it was simply billed as regular professional time. Bracken also indicated that defendant conceded that it had no backup documentation from which to differentiate between the time a professional spent traveling to the job site and the time actually spent at the site.

John Ruschke, one of the engineering associates assigned by defendant to work on plaintiff's project, confirmed that travel time and work time on a site were not distinguished on defendant's bills. He stated that, if an engineer stopped at several sites in one area on one day, he or she would divide up the travel time "fairly" between the developers. Ruschke reported that defendant maintained no other records other than the engineer's daily time sheets from which actual travel time could be determined. In a written submission to the Board, defense counsel asserted that secretarial time was a direct "out-of-pocket cost[ ] and not overhead." By

contrast, Ruschke testified that secretarial time was billed out as professional time, not as an out-of-pocket expense.

By resolution dated August 20, 2001, the Board approved defendant's charges for project coordination and travel time, disallowed defendant's charges for billing inquiries and map preparation, and reduced defendant's charges for secretarial time from $50 per hour to $25 per hour. In so doing, the Board determined that travel time was properly included in a professional's reported work time. The Board made no finding, however, as to whether a secretary was a professional for purposes of *N.J.S.A.* 40:55D–53.2(a), and offered no explanation as to the reasoning behind its decision to cut the secretarial fees in half.

B

*Superior Court Proceedings*

On September 24, 2001, plaintiff filed a nine-count complaint in the Superior Court, Law Division, Sussex County, against defendant, the Borough and the Board. Plaintiff's suit was in part a prerogative writs action appealing the Board's rulings with respect to defendant's charges for secretarial, project coordination, and travel time (counts one through four), and also purported to assert various common law claims, including fraud, unjust enrichment, and breach of fiduciary duty, on behalf of itself and a putative class of plaintiffs similarly situated (counts five through nine). After joinder of issue, the trial court entered an order bifurcating the two aspects of the case.

On September 13, 2002, the court held a hearing regarding the counts in plaintiff's complaint seeking judicial review of the Board's ruling. Neither the Board nor the Borough participated in this hearing. At this hearing, plaintiff's counsel argued that, contrary to the position taken by defendant's counsel at the Board hearing, secretaries were not professionals for purposes of *N.J.S.A.* 40:55D–53.2(a). In support of this argument, plaintiff's counsel emphasized that if defendant's secretaries were paid $50

per hour, they would earn an approximate annual salary of $100,000.

In response, defendant reiterated its position that secretarial expenses was properly billable as a professional's out-of-pocket expenses under *N.J.S.A.* 40:55D–53.2(a). According to defendant, this category of expenses includes the "normal and typical expenses incurred in processing applications and inspecting improvements."

After considering the arguments of counsel, the trial court ruled that defendant was not authorized under *N.J.S.A.* 40:55D–53.2(a) to bill developers separately for secretarial time, or to bill for time spent on duplicate site map preparation or billing inquiries. The court permitted defendant to bill developers for project coordination and travel time, provided such charges were substantiated as required under the statute. The court gave defendant thirty days to submit revised invoices incorporating the necessary backup information to identify, with particularity, the travel time spent by each professional in reaching a specific site.

On March 21, 2003, the court held a second hearing to evaluate defendant's efforts to substantiate its bills for project coordination and travel time. After determining that no backup information had been produced, the court ruled that plaintiff was entitled to judgment as to the disputed project coordination fees, but that it would give defendant one final opportunity to identify the actual travel time billed to plaintiff during the disputed period.

Three days later, the court entered judgment against defendant in the amount of $3,362.62, which covered the disputed secretarial charges ($1,429.66), project coordination charges ($859.28), map preparation charges ($412.75), and billing inquiry charges ($660.93). The court also directed defendant to ensure that its invoices complied with the statute "from the date of this Order going forward," and held in abeyance a final determination on the travel time charges.

At this point, the trial court authorized plaintiff to initiate class-wide discovery.[1] Plaintiff's discovery efforts revealed that defen-

dant had: (1) separately billed developers for secretarial services in connection with at least 360 projects throughout the State between 1995 and 2001; and (2) issued statutorily-deficient invoices to the developers of at least 600 projects during the same time period. Armed with this information, plaintiff moved for class certification pursuant to *R.* 4:32–1, as well as for partial summary judgment on certain of the class action counts. Defendant cross-moved for summary judgment dismissing all remaining counts of plaintiff's complaint.

After considering the submission of the parties, and hearing oral argument from counsel, a different trial judge denied plaintiff's motions for class certification and partial summary judgment, and dismissed as moot all remaining counts of plaintiff's complaint. The court also entered judgment against defendant in the amount of $1,000, based upon its failure to properly substantiate its travel time charges. By separate order, the court denied plaintiff's subsequent application for counsel fees.

## II

■ Defendant contends that the trial court's decision to dismiss the class action counts of plaintiff's complaint may be affirmed either because a class action asserting common law causes of action against a municipally-retained professional is not authorized under *N.J.S.A.* 40:55D–53.2(a), or because it runs counter to the court's decision in *Neelthak Dev. Corp. v. Twp. of Gloucester,* 272 *N.J.Super.* 319, 639 *A.*2d 1141 (App.Div.1994). We agree. It is clear to us that plaintiff's direct suit against defendant for damages is barred under both of the authorities cited.

In *Neelthak Dev. Corp. v. Twp. of Gloucester, supra,* 272 *N.J.Super.* at 322, 639 *A.*2d 1141, a case pre-dating the adoption of *N.J.S.A.* 40:55D–53.2(a), the plaintiff-developers sued both the

---

[1] We denied defendant's interlocutory motion for leave to appeal the court's ruling authorizing class-wide discovery.

Township of Gloucester and the engineering firm the Township had retained to perform inspection work on its behalf. The suit was based upon allegedly unreasonable fees charged by the engineering firm and deducted from the plaintiffs' escrow account by the Township. The *Neelthak* plaintiffs sought monetary damages from the engineering firm, based upon allegations that it had engaged in "wrongful, negligent or fraudulent billing practices," and a determination of whether the Township was entitled to the monies it claimed were due and owing. *Id.* at 322–23, 639 *A.*2d 1141. After the trial court dismissed the plaintiffs' suit in its entirety as being an untimely prerogative writs action, the plaintiffs appealed. *Id.* at 322, 639 *A.*2d 1141.

On appeal, we reinstated the plaintiffs' suit against the Township, based upon our finding that the plaintiffs had also asserted non-prerogative writs causes of action against the Township to vindicate their interests in the correctness of charges for engineering fees, receiving proper credits and avoiding future incorrect billings. *Id.* at 324, 639 *A.*2d 1141. In this regard, we noted that it did not appear that any formal procedure existed on the municipal level for a developer to challenge the accuracy or propriety of a charge to an escrow account or to obtain backup documentation. *Id.* at 323–24, 639 *A.*2d 1141.

We affirmed, however, the trial court's dismissal of plaintiffs' direct tort action against the engineering firm, based on our unwillingness to create the new cause of action asserted by plaintiffs against the engineering firm, when it appeared that plaintiffs had the potential for a full recovery against the Township. In so doing, we recognized that the engineer's primary duty was owed to the planning board, not the plaintiffs.

Thus, in *Neelthak,* we declined to "posit a cause of action such as plaintiffs assert against staff employees or contractors independent of the immunities preserved by the Tort Claims Act," especially where the law required the employer or contractor to make the plaintiffs whole if their allegations were proven. *Id.* at 325–26, 639 *A.*2d 1141. To the extent that the engineer's participation was

necessary for the purposes of discovery in the plaintiffs' suit against the Township, it could be brought into the case by the Township as a third-party defendant. *Id.* at 326, 639 *A.2d* 1141.

*N.J.S.A.* 40:55D–53.2(a) was enacted by the Legislature one year after our decision in *Neelthak.* The statute sets forth the procedure a developer must follow in the event of a billing dispute with a municipal professional:

> a. An applicant shall notify in writing the governing body with copies to the chief financial officer, the approving authority and the professional whenever the applicant disputes the charges made by a professional for service rendered to the municipality in reviewing applications for development, review and preparation of documents, inspection of improvements, or other charges.... The governing body, or its designee, shall within a reasonable time period attempt to remediate any disputed charges. If the matter is not resolved to the satisfaction of the applicant, the applicant may appeal to the county construction board of appeals ... any charge to an escrow account.... An applicant or his authorized agent shall submit the appeal in writing to the county construction board of appeals. The applicant or his authorized agent shall simultaneously send a copy of the appeal to the municipality, approving authority, and any professional whose charge is the subject of the appeal. An applicant shall file an appeal within 45 days from receipt of the informational copy of the professional's voucher ..., except that if the professional has not supplied the applicant with an informational copy of the voucher, then the applicant shall file his appeal within 60 days from receipt of the municipal statement of activity against the deposit or escrow account.... An applicant may file an appeal for an ongoing series of charges by a professional during a period not exceeding six months to demonstrate that they represent a pattern of excessive or inaccurate charges.

> b. The county construction board of appeals shall hear the appeal, render a decision thereon, and file its decision with a statement of the reasons therefor with the municipality or approving authority not later than 10 business days following the submission of the appeal.... The decision may approve, disapprove, or modify the professional charges appealed from. A copy of the decision shall be forwarded ... to the party making the appeal, the municipality, the approving authority, and the professional involved in the appeal. Failure by the board to hear an appeal and render and file a decision thereon within the time limits prescribed in this subsection shall be deemed a denial of the appeal for purposes of a complaint, application, or appeal to a court of competent jurisdiction.

> [*N.J.S.A.* 40:55D–53.2(a).]

Here, plaintiff argues that the Legislature, in enacting *N.J.S.A.* 40:55D–53.2(a), could have expressly precluded non-prerogative writs causes of action directly against municipal professionals arising out of billing disputes if it had intended to do so. This

argument implicitly misstates the state of the law predating the adoption of the statute.

Plaintiff, and all other similarly-situated developers, had no right of action against defendant under *Neelthak* prior to the enactment of *N.J.S.A.* 40:55D–53.2(a). Thus, because no such right was specifically created by the Legislature, it is plaintiff's class action claims that now must fall. *See Osback v. Twp. of Lyndhurst,* 7 *N.J.* 371, 376, 81 *A.2d* 721 (1951); *Livingstone v. Abraham & Straus, Inc.,* 111 *N.J.* 89, 102–03, 543 *A.2d* 45 (1988).

Thus, under both *Neelthak* and *N.J.S.A.* 40:55D–53.2(a), plaintiff was only entitled to pursue an appeal against the Borough in order to obtain a credit to be applied to the escrow account it maintained with the Borough. *See N.J.S.A.* 40:55D–53.2(d). The trial court's decision to deny class certification and dismiss the class action counts against defendant is affirmed. In this light, we do not address plaintiff's arguments with respect to the denial of class certification.

## III

### *Fee for Secretarial Services*

On its cross appeal, defendant contends that the trial court committed reversible error in concluding that *N.J.S.A.* 40:55D–53.2(a) did not allow an engineer to separately bill for secretarial time. We disagree. We view this issue as involving a purely legal question subject to our de novo review. *Atlantic Container v. Twp. of Eagleswood Planning Bd.,* 321 *N.J.Super.* 261, 269, 728 *A.2d* 849 (App.Div.1999); *Wyzykowski v. Rizas,* 132 *N.J.* 509, 518–20, 626 *A.2d* 406 (1993); *Manalapan Realty v. Manalapan Twp. Comm.,* 140 *N.J.* 366, 378, 658 *A.2d* 1230 (1995).

It is well-settled that a statute should be construed "sensibly and in furtherance of the underlying legislative purpose." *Thomas Group v. Wharton Senior Citizen Hous., Inc.,* 163 *N.J.* 507, 517, 750 *A.2d* 743 (2000); *accord Franek v. Tomahawk Lake Resort,* 333 *N.J.Super.* 206, 218, 754 *A.2d* 1237 (App.Div.), *certif.*

*denied,* 166 *N.J.* 606, 767 *A.*2d 484 (2000). If the statute is clear and unambiguous on its face and admits of only one interpretation, a court need look no further in divining the Legislature's intent. *Nobrega v. Edison Glen Assoc.,* 167 *N.J.* 520, 536, 772 *A.*2d 368 (2001). When, however, a statute is silent or has more than one possible meaning, a court must interpret the statute in light of the Legislature's intent. *Burns v. Belafsky,* 166 *N.J.* 466, 473, 766 *A.*2d 1095 (2001). To ascertain legislative intent, a court may look to "extrinsic evidence, including legislative history, committee reports, and contemporaneous construction." *Ibid.*

Under *N.J.S.A.* 40:55D–53.2(a):

The chief financial officer of a municipality shall make all of the payments to professionals for services rendered to the municipality or approving authority for review of applications for development, review and preparation of documents, inspection of improvements or other purposes.... Such fees or charges shall be based upon a schedule established by resolution. *The application review and inspection charge shall be limited only to professional charges for review of applications, review and preparation of documents and inspections of developments under construction and review by outside consultants when an application is of a nature beyond the scope of the expertise of the professionals normally utilized by the municipality. The only costs that shall be added to any such charges shall be actual out-of-pocket expenses of any such professionals or consultants including normal and typical expenses incurred in processing applications and inspecting improvements.* The municipality or approving authority shall not bill the applicant ... for any municipal clerical or administrative functions, overhead expenses, meeting room charges, or any other municipal costs and expenses except as provided for in this section, nor shall a municipal professional add any such charges to his bill. If the salary, staff support and overhead for a municipal professional are provided by the municipality, the charge shall not exceed 200% of the sum of the products resulting from multiplying (1) the hourly base salary, which shall be established annually by ordinance, of each of the professionals by (2) the number of hours spent by the respective professional upon review of the application for development or inspection of the developer's improvements, as the case may be. For other professionals the charge shall be at the same rate as all other work of the same nature by the professional for the municipality when fees are not reimbursed or otherwise imposed on applicants or developers.

[Emphasis added.]

The legislative purpose behind this statute was to "balance[ ] the municipality's need for expert and professional advice in the review of applications and the inspection of subdivision and site plan improvements mandated under the MLUL, with an appli-

cant's need for supervision and accountability over deposits and escrow accounts maintained for the payment of municipal professional fees." *Senate Community Affairs Committee, Statement to A. 518* (February 6, 1995).

In its decision on the issue of whether defendant was permitted to separately bill applicants for secretarial services under *N.J.S.A.* 40:55D–53.2(a), the trial court concluded that secretarial expenses did not qualify as "professional" charges. In reaching this conclusion, the court relied upon the definition of professional services set forth as part of the Local Public Contracts Law. *N.J.S.A.* 40A:11–2(c)(6). In this statute, professional services are defined as services requiring "knowledge of an advanced type in a field of learning acquired by a prolonged formal course of specialized instruction and study as distinguished from general academic instruction," performed by a person "authorized by law to practice in a recognized profession whose practice is regulated by law."

The court further noted that, aside from the issue of whether secretaries qualified as professionals according to *N.J.S.A.* 40:55D–53.2(a), an applicant was only permitted to be separately billed by the municipality for professional-related overhead and support staff costs, when the professional was a full-time salaried employee of the municipality and the municipality furnished the professional's office and staff. In such instances, the engineer's billable rate did not cover overhead. The court reasoned that the statute prohibited outside professionals with their own offices and staffs from separately charging for staff support and overhead, because it was generally expected that these elements would be built into the professional's billing rate. This practice is also customary for other professionals, such as attorneys.

Finally, the trial judge rejected the notion that secretarial expenses constituted out-of-pocket expenses:

> Incidentally, secretarial services are not reimbursable expenses. Reimbursable expenses aren't ... meant to be, you know, sort of generalized overhead, and they're ... meant to be specific charges that are made perhaps for copying, perhaps for telephone, for a variety of things that ... might appropriately be

reimbursable expenses. But ... the labor cost of the staff of a professional are not reimbursable expenses.

Nobody—I've never seen them treated as that in any kind of a professional bill anyplace, and I cannot imagine that the Legislature meant them to be treated that way, particularly when it said that—in an earlier subsection of the statute, that there are to be no charges for clerical and administrative costs.

Defendant argues that the trial court erred in analyzing whether secretarial fees qualified as "professional charges" under *N.J.S.A.* 40:55D–53.2(a), because: (1) it never took this position before the court; and (2) the Board made no such determination. Defendant further contends that, contrary to the trial judge's ruling, secretarial charges clearly qualified as out-of-pocket expenses for which separate billing was otherwise permitted under the statute. We again disagree.

■ Initially, we note that regardless of the position defense counsel chose to take at the trial level, the issue of secretarial fees as professional expenses was squarely before the Board as a result of the 2000 and 2001 fee schedules produced by defendant, as well as through Ruschke's testimony. In both fee schedules, secretarial fees were portrayed as professional charges. In fact, in its 2001 fee schedule, defendant deliberately chose not to include secretarial costs in its new listing of reimbursable "expenses." At the Board hearing, Ruschke specifically testified on behalf of defendant that secretarial charges were considered professional charges by the firm, and billed out accordingly.[2]

While it is true, as defendant notes, that the Board made no express finding that secretarial fees qualified as professional charges, that fact alone has no particular significance. Although it is clear that the Board believed that it was permissible to separately bill developers for secretarial fees under *N.J.S.A.* 40:55D–53.2(a) (albeit not at the rate originally set by defendant), it did not specify into which category, i.e., professional charges or out-of-pocket expenses, it believed the fees fell. Accordingly, it was

---

[2] Secretaries were also delineated as professionals in additional billing backup that was prepared by Ruschke and submitted to the Board on defendant's behalf.

entirely appropriate for the trial court to have considered whether secretarial fees qualified as separately billable professional charges.

We also reject defendant's contention that its secretarial fees constituted out-of-pocket expenses that were separately reimbursable under the statute. We agree with the trial judge that office staff labor charges are not generally considered to be "out-of-pocket expenses" akin to postage and copying charges. Indeed, defendant's argument is undermined by its failure to include secretarial fees as reimbursable out-of-pocket expenses when it prepared its 2001 fee schedule. Defendant has also not provided any proofs indicating that the annual salaries it paid to the secretaries who worked on plaintiff's project corresponded to a $50 hourly rate.

Our conclusion that the term "out-of-pocket expenses," as used in *N.J.S.A.* 40:55D–53.2(a), does not include secretarial fees is further supported by the statute's separate treatment of the matter of reimbursement for staff support and overhead. Although defendant suggests that this portion of the statute actually bolsters its out-of-pocket expense argument because it only prohibits the reimbursement of municipal secretarial costs and not the secretarial costs of an independent engineer, this section of *N.J.S.A.* 40:55D–53.2(a) is entirely separate from the portion addressing out-of-pocket expenses, and has no bearing on the type of items that may be included as out-of-pocket expenses.

As conceded by defendant, this section of the statute does not prohibit the reimbursement of municipal secretarial/overhead costs. Rather, it simply imposes a limit on the amount of reimbursement that can be sought for municipal secretarial/overhead costs, while leaving intact the ban on any separate billing for an independent engineer's own secretarial costs. In this light, we hold that secretarial fees were not intended to be billed separately, but were intended by the Legislature to be part of the overhead that was generally included within an independent professional's hourly rate.

## IV

■ Finally, we reject defendant's request to give our holding affirming the trial court's rulings with respect to secretarial fees and travel time allocation prospective application. *N.J.S.A.* 40:55D–53.2(c) was in effect at the time defendant was working on plaintiff's project. The statute clearly provides that:

[e]ach payment charged to the deposit for review of applications, review and preparation of documents and inspection of improvements shall be pursuant to a voucher from the professional, *which voucher shall identify the personnel performing the service, and for each date the services performed, the hours spent to one-quarter hour increments, the hourly rate and the expenses incurred.* All professionals shall submit vouchers to the chief financial officer of the municipality on a monthly basis in accordance with schedules and procedures established by the chief financial officer of the municipality. . . . The professional shall send an informational copy of all vouchers or statements submitted to the chief financial officer of the municipality simultaneously to the applicant.

[Emphasis added.]

As such, defendant should have known that it was required to document all professional time, including travel time, to the quarter hour, and to provide this detailed information directly to plaintiff. Here, not only did defendant not do this, but it also allowed its professionals to adjust the time billed for travel as they saw fit. As such, defendant completely circumvented the provisions in *N.J.S.A.* 40:55D–53.2, which were partly intended to make the professionals retained by municipalities more accountable to the developers who ultimately had to pay their bills.

Therefore, because defendant has not demonstrated that its interpretation of *N.J.S.A.* 40:55D–53.2(a) was reasonable, or that it acted in good faith based upon that interpretation, we affirm the trial court's decision requiring defendant to reimburse plaintiff for the billed secretarial and travel time.

Affirmed.