45 N.J. Super. 516 (1957)
133 A.2d 358
IRVING ZAHN AND IVY HILL PARK, SECTION THREE, INC., A NEW JERSEY CORPORATION, PLAINTIFFS-APPELLANTS,
v.
BOARD OF ADJUSTMENT OF THE CITY OF NEWARK, AND WILLIAM FIVERSON, ZONING OFFICER, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 10, 1957.
Decided June 24, 1957.
*518 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Aaron Lasser argued the cause for appellants (Mr. Arthur Slavitt, attorney; Messrs. Lasser and Lasser, of counsel).
Mr. Joseph A. Ward argued the cause for respondents (Mr. Vincent P. Torppey, attorney; Messrs. Alan Handler and Milton C. Yarrow, amici curiae).
The opinion of the court was delivered by FREUND, J.A.D.
Plaintiffs instituted this action seeking an adjudication that the establishment by a commercial cleaner of a depot in the basement of a multi-family house, where clothing to be cleaned and pressed off-the-premises may be deposited, does not constitute doing business under the terms of the zoning ordinance of the City of Newark, or, if it be deemed doing business, for a reversal of the defendant board of adjustment's refusal to grant a variance for its use.
Plaintiff Ivy Hill Park, Section Three, Inc., leased to the plaintiff Irving Zahn a room in the basement of its apartment building to be used as a depot for the deposit and pick-up of various articles of clothing to be cleaned and pressed. The building, a 420-family apartment house, is one of a group of five equally sized buildings located at Ivy Hill Park, in a Fourth Residence District of the City of Newark. Zahn conducts an off-premises dry-cleaning business and intends periodically to pick up the articles of clothing left by the tenants in the basement room and after cleaning and pressing them off the premises, to deliver them directly to the tenants. While no sign outside *519 the building advertises this service, there is a small sign inside indicating its location. The trial court personally inspected the basement room and found that it contained a counter, some shelves, and three pipe racks with clothes hangers. At the time of this inspection, the plaintiff Zahn and a female helper were in the room. The record does not disclose, however, whether this helper was regularly in attendance.
Plaintiffs were informed by the zoning enforcement office that the use they proposed to make of the basement room constituted a business and hence was in violation of the zoning ordinance. They applied for a variance, and after a hearing their application was denied. The present action was therefore initiated, and from a judgment of involuntary dismissal in the trial court plaintiffs appeal upon the following grounds: that the maintenance of a garment pick-up depot for the exclusive use of the apartment tenants does not constitute doing business within the intendment of the zoning ordinance; that the operation of this service is but incidental and accessory to the operation of a large residential apartment development; and that if the proposed service is in violation of the zoning ordinance a variance to permit its operation should be granted, and the refusal of the board to grant one was unreasonable, arbitrary and capricious.
Section 36.5 of the local zoning ordinance, governing permissible uses in a Third Residence District, provides inter alia:
"2. Use Regulations. A building or premises shall be used only for the following purposes: * * *
b. Multiple Dwelling. * * *
g. Accessory buildings including private garages. * * *"
Section 36.6, governing such uses in a Fourth Residence District, permits "any use permitted in the Third Residence District." Both of these sections, however, are silent as to uses incidental or accessorial to the use of a building designated as a "multiple dwelling."
*520 Plaintiffs' principal argument on this appeal is that the service would be a convenience to the tenants. Without such a depot, they urge, tenants will be plagued by solicitation from local cleaners and considerable congestion results in the elevators and corridors when their garments are picked up and delivered. It is therefore contended that the service is merely incidental to the primary residential function of the building and not primarily commercial in nature. Although it cannot be denied that the convenience of leaving clothing in a basement depot outweighs that of delivering it to a distant cleaner, such an argument might well defeat the very thesis of zoning, which is that of separation of business and industry from the home. Indeed, it is always more convenient for the customer that the business be close-by. However, sound social, economic and governmental policy dictates a separation, wherever possible, of residential areas from industrial or business areas. Duffcon Concrete Products v. Borough of Cresskill, 1 N.J. 509, 515 (1949); and see Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 391, 47 S.Ct. 114, 71 L.Ed. 303 (1926).
In support of their contention that the proposed operation does not constitute doing business, plaintiffs rely upon Flagg v. Murdock, 172 Misc. 1048, 15 N.Y.S.2d 635 (Sup. Ct. 1939), where the court considered a multiple-family apartment of the type here concerned having in its basement a room referred to as a "tailor shop" where the tenants would leave their clothing to be collected by a valet who would take the garments off the premises to be cleaned and pressed. The court there stated, "it can hardly be said this room so used is being used for business."
The view thus taken in the Flagg case appears to be a somewhat restricted interpretation of the term "business," which elsewhere has been said to be a very comprehensive term which "embraces everything about which a person can be employed. * * * That which occupies the time, attention and labor of men for the purpose of a livelihood or profit." Flint v. Stone Tracy Co., 220 U.S. 107, *521 31 S.Ct. 342, 357, 55 L.Ed. 389 (1910); Fisher v. Board of Zoning Appeals of Town of Monroe, 143 Conn. 358, 122 A.2d 729 (Sup. Ct. 1956); Ballentine, Law Dictionary (2d ed.), p. 179; 2 Yokely, Zoning Law and Practice (1953), sec. 214, p. 99; and, in its broad sense, connoting "the efforts of men by varied and diverse methods of dealing with each other to improve their individual economic conditions." People ex rel. Attorney-General v. Jersin, 101 Colo. 406, 74 P.2d 668 (Sup. Ct. 1937).
Our courts, in the context of zoning, have taken a similarly comprehensive view of the nature of a business. See Morris v. Elk Tp., 40 N.J. Super. 34 (Law Div. 1956), where business was defined as "a commercial enterprise for profit"; and Beckmann v. Township of Teaneck, 6 N.J. 530, 536 (1951), where it was held that the maintenance of a sign to indicate a business operation, constituted "a business use," in violation of the local ordinance. Such a view comports with and is in furtherance of the thesis of separation of business and residence, for it insures against circumvention of it by business enterprises designed to be without many of their normal exterior incidents, but nevertheless unchanged in substance. On the basis of the meaning thus ascribed to business there can be little doubt that the proposed operation falls within its scope. Plaintiffs proposed not merely a basement room set aside for the purpose of pick-up by any merchant, or any tailoring and cleaning firm, but a room equipped to operate as an integral part of a particular business, to be systematically and regularly served by it and in effect to function as its inlet. To describe it as anything less than a business enterprise would be idle. See Meserole v. Board of Adjustment, City of Dallas, 172 S.W.2d 528 (Tex. Civ. App. 1943).
We now proceed to consider whether the permission, granted by the ordinance, to maintain a "multiple dwelling" in a Fourth Residence District, carries by implication permission to maintain a garment cleaning pick-up depot in the basement. The allowance of a primary use generally authorizes all uses normally accessory, auxiliary or incidental *522 thereto, 8 McQuillin, Municipal Corporations (3d ed. 1950), sec. 25.125, p. 206, and "accessory use," in turn, is defined as a use "customarily incidental to the principal use of a building," State v. Mair, 39 N.J. Super. 18, 23 (App. Div. 1956); cf. Wright v. Vogt, 7 N.J. 1 (1951); "one customarily incident," Dolan v. DeCapua, 16 N.J. 599, 605 (1954); "customarily incidental to the operation," Food Corporation v. Zoning Board of Adjustment, 384 Pa. 288, 121 A.2d 94 (Sup. Ct. 1956); "`customary with and incidental to' the permitted use," Application of Emmett S. Hickman Co., 10 Terry 13, 49 Del. 13, 108 A.2d 667, 671 (Sup. Ct. 1954); "a use which is dependent on or pertains to the principal or main use," Town of Needham v. Winslow Nurseries, 330 Mass. 95, 111 N.E.2d 453, 40 A.L.R.2d 1450 (Sup. Jud. Ct. 1953), "so necessary * * * or so commonly to be expected * * * that it cannot be supposed the ordinance was intended to prevent it." Pratt v. Building Inspector of Gloucester, 330 Mass. 344, 113 N.E.2d 816 (Sup. Jud. Ct. 1953).
Applying this test of "customary incidence," we find that the proposed dry-cleaning depot is not accessory to a "multiple dwelling," for it is not customarily incidental to the operation of an apartment house. For a contrary result plaintiffs rely upon Buffalo Park Lane v. City of Buffalo, 162 Misc. 207, 294 N.Y.S. 413 (Sup. Ct. 1937), where the court held the use of an adjoining lot for parking is a necessary incident to the maintenance of an apartment hotel. It is there stated that the "use by apartment hotels of parking space for guests is a necessary incident of the business of an apartment hotel and in relation to the Zoning Ordinance an accessory use of the premises of the apartment hotel * * *." We find little analogy between a parking lot adjoining an apartment hotel and the use here proposed. Thus, that holding is of little avail to plaintiffs.
The plaintiffs lastly contend that they have shown "special reasons" warranting the recommendation of a variance by the Board of Adjustment, N.J.S.A. *523 40:55-39(d); Ward v. Scott, 11 N.J. 117 (1952); and, hence, that its denial by the board was unreasonable, arbitrary and capricious. But the only special reason shown is the congestion which attends pick-up and delivery from the individual tenants. This difficulty, however, may be eliminated by dealing with the cleaner at his main place of business, and thus the congestion is self-imposed by the selection of pick-up and delivery service. See Ranney v. Istituto Pontificio Delle Maestre Filippini, 20 N.J. 189, 199 (1955). We find that under the facts here present the Board's denial of a variance was well within the bounds of its discretion.
The judgment appealed from is affirmed.