85 N.J. Super. 555 (1964)
205 A.2d 459
CITY OF NEWARK, PLAINTIFF-RESPONDENT,
v.
JOHN DALY, AGENT, AND N.J. AUTOMATIC DAIRY SERVICE, INC., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 9, 1964.
Decided December 10, 1964.
*556 Before Judges CONFORD, KILKENNY and LEWIS.
Mr. Allen Ravin argued the cause for appellants (Messrs. Wilentz, Goldman & Spitzer, attorneys; Mr. David M. Pindar, of counsel).
Mr. Joseph S. Pecora argued the cause for respondent (Mr. Norman N. Schiff, attorney).
The opinion of the court was delivered by KILKENNY, J.A.D.
Is a single coin-operated milk vending machine in the basement of a 400-family, high-rise modern apartment house, for the use of the tenants therein, a *557 violation of the city zoning ordinance which limits the use of property in this residential district to multiple dwellings and hotels? That is the legal question before us in this appeal.
Both the Municipal Court of Newark and the Essex County Court, on appeal, found defendants guilty of violating the ordinance by reason of their placing such a machine in each of five multiple dwellings, housing a total of 2,038 tenants in this large apartment house complex known as "Ivy Hill." They were each fined a total of $500, or $100 for each milk vending machine so installed without having obtained a variance or certificate of occupancy. Defendant Daly, acting as agent of the owner of the apartment houses, permitted installation of the machines by the codefendant. Each machine had the required board of health license.
Defendants appeal from the County Court judgment of conviction. They contend that the maintenance of a coin-operated milk vending machine at the locations involved in this case is an accessory use under a proper application of zoning law and, accordingly, not a violation of the zoning ordinance.
The precise question herein has not been previously answered in any reported decision in our State or, so far as we know, in any unpublished opinion of our appellate courts. The issue was presented to the Law Division several years ago in the form of a proceeding in lieu of prerogative writs to review a determination of the Board of Adjustment of Newark, denying an application by the owner of these apartment houses for a variance to permit the placing of such machines in these multiple dwellings. The action of the board of adjustment was affirmed by the Law Division and no appeal was taken from that judgment. In an unpublished letter opinion, dated January 23, 1957, Judge Colie then ruled that "the placing of these vending machines in the basement of the premises in question constitutes a business operation" prohibited under the ordinance. The judge relied upon a statement in Gilbert v. Town of Irvington, 20 N.J. 432, 438 (1956), in which the Supreme Court, in declaring invalid a local ordinance which required payment of an annual license *558 fee of $100 for each milk vending machine in the municipality, held that the fee was excessive and discriminatory, noting that the operators of such machines "are in direct competition with other vendors of milk."
The Court of Appeals of New York was faced with the question before us in Dellwood Dairy Co. v. City of New Rochelle, 7 N.Y.2d 374, 197 N.Y.S.2d 719, 165 N.E.2d 566 (1960), and decided that a milk vending machine was a proper accessory use of an apartment house located in a residential zone. In doing so, it reversed an earlier decision of the Appellate Division to the contrary. 7 A.D.2d 1026, 184 N.Y.S.2d 656 (1959). The reasoning of the New York Court of Appeals is summed up in the following excerpt from its opinion:
"[T]he use of a milk vending machine is but a different method of doing a traditional service for a householder. It is a common experience that new times bring not only new problems but new ways and means of dealing with old ones. * * * The presence of a milk vending machine * * * in the basement of an apartment building which is not accessible to the general public, can have little, if any, adverse application to the character of the residential neighborhood. It is not commercialism such as ordinarily disturbs the quiet and peaceful enjoyment of the home but, rather, the convenient substitute for the route man. It is a device designed to perform `a use customarily incidental and subordinate' to the normal enjoyment of an apartment house." (197 N.Y.S.2d, at p. 720, 165 N.E.2d, at p. 567).
We are persuaded that this rationale represents a reasonable common-sense approach to the problem.
Another earlier New York case, also upholding the right to have a milk vending machine in an apartment house, is Tarr v. City of New York, 12 Misc.2d 796, 177 N.Y.S.2d 466 (Sup. Ct. 1957). See, too, People v. Page, 36 Misc.2d 840, 234 N.Y.S.2d 518 (N.Y. City Crim. Ct. 1962), which relied upon Dellwood in extending the doctrine to machines for the vending of soda and bakery products.
In finding defendants guilty, the County Court relied principally upon our decision in Zahn v. Newark Board of Adjustment, *559 45 N.J. Super. 516 (App. Div. 1954), in which we held that a dry-cleaning pickup depot in the basement of these same Ivy Hill apartments contravened the zoning ordinance as an unwarranted business use in this residential district. But in Zahn the objective evidence of a business use of a portion of these residential buildings was much more manifest than in the instant situation. In that case, not only was a portion of the basement allocated for this business purpose, but also there was an employee of the business operator in attendance to receive the tenants' clothing for off-site cleaning and there were racks, a counter, a cash register, person-to-person money transactions, and all the indicia of a dry-cleaning establishment being conducted on the premises, except the actual dry-cleaning work itself.
In the instant case there is, to be true, a business use of the premises in the sense that milk is sold and bought through the means of this automatic mechanical device. But the machine herein is not such an objectively obvious business operation as in Zahn. It is an unobtrusive business instrumentality, serving solely the needs and convenience of the tenants and supplementing the door-to-door delivery of milk by the route man in the same building, in the same residential neighborhood. As the New York court aptly phrased it in Dellwood, as noted above, "It is not commercialism such as ordinarily disturbs the quiet and peaceful enjoyment of the home but, rather the convenient substitute for the route man."
To refer to a particular use in a residential district as a "business use" is not per se sufficient to stamp it as a violation of the zoning ordinance. There are many business uses in buildings limited by the zoning ordinance to a residential use which nobody regards as in contravention of the zoning limitation. Operation of an apartment house is in itself a business. Many modern apartment houses are equipped with up-to-date basement laundries where automatic, coin-operated washing machines and dryers are used by the tenants to fulfill that necessary household chore. The utility companies sell their water, gas, electrical energy and telephone service in *560 residential buildings. A basement telephone pay booth for the use of tenants who have no telephone in their own apartments would not be regarded as a zoning violation. And how about postage vending machines? The hired baby-sitters carry on their business within the building, as do the various tradesmen who cater to the wants of the occupants. The most recent high-rise luxurious apartment houses are equipped with swimming pools and skating rinks, with all the dressing room and locker facilities incidental thereto. Presumably, these entail some fees or charges. If and when "Pay T-V" comes into common use in New Jersey, as it already exists in other parts of the country, we would hardly treat such a commercial venture in a residential building as a zoning violation.
We find no useful purpose herein in an extended analysis of the meaning of "accessory use." That subject has received full development in many prior decisions. See Zahn v. Newark Board of Adjustment, supra; 1 Rathkopf, Law of Zoning and Planning (3d ed. 1960), pp. 23-1 et seq. and his reference to milk vending machines at pp. 23-41, 42. Each case must be determined on the basis of its own particular facts. Decisions such as Skinner v. Zoning Board of Adjustment, Cherry Hill Tp., 80 N.J. Super. 380 (App. Div. 1963) and Wright v. Vogt, 7 N.J. 1 (1951), reiterate general principles but they are of no particular help here, dealing as they do with the pursuit of a hobby as an accessory use in a residential district. As we said recently in Borough of Northvale v. Blundo, 85 N.J. Super. 56, 59 (App. Div. 1964), even where the ordinance, as here, does not speak in terms of a use accessory to the residence use, "[A]n accessory use must ordinarily be implied  as a matter of law  as a right which accompanies the principal use." In the words of the Zahn case, supra, 45 N.J. Super., at p. 521, the allowance of a primary use "generally authorizes all uses normally accessory, auxiliary or incidental thereto."
The use of the word "customarily," when applied to "incidental," may be helpful to establish affirmatively the existence of a use as "accessory." But the fact that a use is not *561 "customarily" indulged in is not conclusive. Thus, private garages are customarily used in connection with residences and are deemed to be an accessory use in a residential zone. But private swimming pools also are an accessory use in a residential zone, even though very few residents in many residential areas customarily have them. In the instant case there was evidence that less than 5% of the apartment houses in the general area of Newark have milk vending machines. The small percentage may be due to various factors  doubt as to the legality of the use, the newness of the idea, or the lack of economic feasibility except in large multiple dwellings. Proof of a greater percentage would have tended to establish affirmatively that these machines were customarily incidental to apartment house operation. But the fact of a relatively small percentage of milk vending machine use in apartment houses does not per se preclude a holding that, at least in those multiple dwellings where they are in actual use, such machines are reasonably accessory, incidental and subordinate to the principal use of the residents in such dwellings.
There may be some fear that our allowance of a milk vending machine in a large apartment house will open the door to an unlimited use of similar mechanical devices in residential buildings, so that the basements of such multiple dwellings may be turned into coin-operated markets and department stores. We would not go as far, under the existing ordinance, as the Illinois court did in Kushner v. Lawton, 351 Ill. App. 422, 115 N.E.2d 581 (App. Ct. 1953), which authorized a retail food store in a large apartment building housing almost 2,000 tenants. To allay such fear, we emphasize that our decision herein is limited to a milk vending machine, a matter sui generis, and is based on the rationale of Dellwood, supra. It is not our function herein to decide anything more than the precise question first noted above. Secondly, any expanded use of apartment house basements through the medium of coin-operated machines may be curbed or regulated by the municipal authorities by the adoption of suitable ordinances. Third, it is to be presumed that the owners of multiple dwellings will *562 not destroy the residential character of their buildings by saturating them with a commercial atmosphere.
For the reasons above stated, the judgments of conviction are reversed.
CONFORD, S.J.A.D. (dissenting).
Dealing with the same Newark zoning ordinance and the same apartment house premises which concern us here, we held in Zahn v. Newark Board of Adjustment, 45 N.J. Super. 516 (App. Div. 1957), that the conduct in the basement thereof of a pick-up station for clothes to be dry-cleaned constituted a violation of the ordinance. While the milk-vending machines here in question are obviously a different kind of use, particularly in that an employee of the commercial operator is not in continual attendance, I am not persuaded that there is any material difference between the two situations in respect of the controlling issue as to whether the uses, although commercial in nature, are nevertheless permissible as customarily accessory to apartment houses located in a residential district wherein the zoning ordinance permits apartment houses but forbids business uses.
The ordinance has express reference to accessory uses in the residential zone here involved only to the extent of allowing "accessory buildings including private garages." As held in Zahn, supra, however, "[t]he allowance of a primary use generally authorizes all uses normally accessory, auxiliary or incidental thereto * * *, and `accessory use,' in turn, is defined as a use `customarily incidental to the principal use of a building'" (45 N.J. Super., at pp. 521-522) (emphasis added). We also there quoted with approval a Massachusetts definition of an accessory use as one "so necessary * * * or so commonly to be expected * * * that it cannot be supposed the ordinance was intended to prevent it." Id., at p. 522.
The question before us, then, is whether on-premises automatic milk-vending machines are customarily incidental to apartment houses. The question is not, in my view, whether such machines are a desirable, convenient or beneficial substitute *563 for or adjunct to the customary delivery of milk to the apartment door by the routeman. The latter proposition is a matter of policy for the governing body of the city if it wishes to permit such installations in apartment houses. Our sole judicial function is to construe the ordinance as it stands; in that regard the inquiry is limited to whether such machines, as fixed, stationary pieces of equipment at all times containing milk ready for dispensing to anyone having access to them, and installed and maintained as a commercial enterprise, are customary incidents to an apartment house.[1] And the question, more narrowly, is whether the claimed use is such a customary incident now, or was when the ordinance was adopted, not whether it will be at some indeterminate time in the future. Cf. Pratt v. Building Inspector of Gloucester, 330 Mass. 344, 113 N.E.2d 816, 817 (Sup. Jud. Ct. 1953).
The deposition testimony adduced by defendant before the County Court of a witness who has had extensive experience in the management of large apartment houses in the metropolitan area was to the effect that an "extremely small percent," estimated at less than 5%, of apartments managed by him had installations of milk vending machines. He said there had been a "small increase" in such uses. He compared a coin-operated laundry machine, which he described as a "next to essential" service in an apartment house, with milk vending machines, which he characterized as an "accommodation service." The Kislak realty organization, with which the witness is associated, intends, he testified, to install "different vending machines" (apparently including milk) in apartment houses now being erected in Newark.
In seeking the hypothetical intent of the Newark city fathers in zoning this district for residential uses inclusive of "multiple dwelling structures," we must logically assume that if they contemplated milk vending machines as an accessory use they also contemplated the vending in apartment houses *564 by machine of other popular commodities commonly known to be so dispensable, such as cigarettes, candy, soda, etc. We were informed upon inquiry at and after argument, without contradiction, that machines vending all such items are or have in the past been installed in the apartment buildings here involved. Indeed, it is general knowledge that many of the common household conveniences aside from those mentioned above, from certain types of packaged groceries to newspapers and paper-back books, are vendible by automatic machines. And the variety of articles so vended continually expands as automation grows. Did Newark's ordinance contemplate a small emporium in the basement of an apartment house as customarily incident to such a structure in a residential district? If not, where is the line to be drawn as to the putative legislative intent? Why only for milk machines?
Defendant urges that we adopt the rationale of the New York case of Dellwood Dairy Co. v. City of New Rochelle, 7 N.Y.2d 374, 197 N.Y.S.2d 719, 165 N.E.2d 566 (Ct. App. 1960), which found a milk vending machine in an apartment house to be "customarily incidental" to the principal use of the property in that it was merely a "convenient substitute for the route man" and not "adverse" to the "character of the residential neighborhood." Whether that result was justified because in fact such machines are common in apartment houses in and around New Rochelle we do not know. That they are neither common nor customary in or around Newark is plainly evident.
In any event, whether a particular type of commercial adjunct to a residential use is or is not adverse to the character of a residentially zoned area is, as I see it, for the judgment of the municipal legislature, not the courts. To say it is not so adverse is to beg the here determinative question whether it is in fact customarily incidental to the residential use. For example, the businesses of operating telephone facilities or automatic washing machines in an apartment house in the instant residential district are inoffensive to the Newark zoning ordinance, not because such equipment does not affect *565 the residential character of the district (it obviously does not), but because the provision of such facilities is undeniably a customary incident to the function served by an apartment house.
The milk machines in these buildings, we are advised, are stocked by only one milk company. Thus, they may constitute a "substitute" for door-delivery by, at most, only one milk distributor, leaving all others to continue their regular deliveries to customers at the premises in the ordinary manner. Fanciers of the brand of milk sold at the machines may still, moreover, prefer door delivery to buying at the machine, and they presumably still enjoy such service. These machines, therefore, were it material, are not a replacement substitute for the routeman in any substantial sense, unless the owner of the premises at some future time authorizes machines to be installed by all major suppliers and prohibits door deliveries.
In final response to the "convenient substitute" argument, it seems to me that the permanent, fixed presence on the premises of a good-sized piece of equipment containing vendible merchandise represents a substantial difference, in a zoning context, from the comings and goings of the familiar milkman who is in the same classification as the generality of delivery people bringing all sorts of purchased merchandise and serviced articles to the apartment dweller's door. All such deliveries as a class represent the clearest kind of business operation customarily incidental to the apartment house use. (They are really not an independent "use" of the property at all.) Stationary vending equipment continuously on the premises, by contrast, is not a customary accessory use of the premises in my judgment, in any fair sense of that language. Certainly the evidence in this case refutes the proposition that milk vending machines are a customary accessory to apartment houses in the Newark area.
I can take no comfort from the assurance of the majority that the holding of the court here is confined to milk machines. As noted above, I see no basis for distinguishing, in the sense of what is "customarily incidental," machines for the vending *566 of such commonly used commodities as cigarettes, cigars, soda and candies. I think either all such machines (including milk) would have to be permitted or none, under the ordinance as it stands. And, as indicated above, I am concerned at how the line could be reasonably drawn to exclude machines for vending many other kinds of commodities if the foregoing were to be held permissible under the ordinance.
Nor can we properly reverse here on the thought that if too many machines are placed in apartment houses, the municipality can always amend the ordinance to restrict them. By then considerable damage might accrue from a zoning standpoint in the form of vesting of prior nonconforming uses. Moreover, the city is now telling us that its own construction of its ordinance as it stands is and has been that no merchandise vending apparatus, including milk machines, is contemplated as permissible for a multiple dwelling in a residential zone, and it is our responsibility to construe the ordinance as it now stands, without reference to the circumstance that the ordinance is always susceptible of amendment.
The practical construction of the ordinance by the city authorities consonant with its present position on the matter, at least since the litigation resulting in the Law Division's 1957 ruling to the same effect in the unreported case cited in the majority opinion, is further persuasive evidence of the tenability of the city's position. See DeVita v. Housing Authority of City of Paterson, 17 N.J. 350, 357 (1955).
I would affirm the judgment of conviction.
NOTES
[1] There is no indication from the record herein that non-residents of the several apartment buildings are precluded from access to the machines.