792 A.2d 572 (2000)
348 N.J. Super. 636
Walter R. STOCHEL, Jr., Jane Tousman, Robert Spiegel, Ken Chang and John Shersick, Plaintiffs,
v.
PLANNING BOARD OF EDISON TOWNSHIP, Defendant, and
JSM at New Dover, L.L.C., Defendant/Intervenor.
Superior Court of New Jersey, Law Division.
Decided June 28, 2000.
Following Remand December 4, 2000.
*573 Stuart J. Lieberman, Princeton, for plaintiffs (Leiberman & Blecher, P.C., attorneys).
Clifford Kuhn, Jr., Edison, for defendant.
Stephen E. Barcan, Woodbridge, for defendant-intervenor (Wilentz, Goldman & *574 Spitzer, attorneys) (Mr. Barcan and Donna M. Jennings, on the brief).
WOLFSON, J.S.C.
I. Introductory Statement
This zoning case requires me to analyze certain vexing questions associated with "accessory" uses that have not yet been squarely addressed by any appellate authority. The specific determination in this case, the circumstances under which a given component of a proposed development will qualify as "accessory," not only implicates jurisdictional issues under the Municipal Land Use Law's comprehensive delegation of enabling authority,[1] but it routinely presents mixed questions of law and fact, necessitating a case by case evaluation by the board. However, because there is a dearth of precedent available, local boards often lack the proper analytical framework within which to adjudicate the issue. This is especially so given the ever-changing societal and technological landscape in New Jersey, which evolution, of necessity, inevitably affects whether a particular use has achieved, or may yet, sometime in the future, attain "accessory" status. Consequently this opinion sets forth the parameters against which local boards may properly evaluate whether "accessory" use status is warranted in a given case.
II. Factual and Procedural Background
In this action Walter R. Stochel, et al. ("objectors")[2] seek to overturn the Edison Township Planning Board's grant of preliminary and final site plan and conditional use approval which included a Walgreen's pharmacy serviced by a double lane drive through window (the "drive-thru").[3] JSM at New Dover, L.L.C. ("applicant"), which obtained the approval that is the subject of this appeal, was granted leave to intervene as a party defendant. JSM is the tenant under a ground lease of 6.3 acres in the Township of Edison.
JSM's initial application was considered at three public hearings held on January 20, 1999, February 9, 1999 and February 17, 1999 and was ultimately denied by the Board by a vote of 5-0. JSM offered the testimony of Julius Szalay, a professional planner and engineer. Mr. Szalay testified that, with the exception of the drive-in component of the bank, the uses proposed by JSM are permitted under Section 86-17A of the Zoning Ordinance. Mr. Szalay explained that drive-in banks are permitted as conditional uses under Section 86-17D and testified that JSM's application met the conditional use criteria. Additionally, Mr. Szalay testified that pursuant to the Tree Replacement Ordinance, JSM would be required to replace 241 trees on the subject property, which the applicant proposed to satisfy by replacing 102 of those trees on-site and planting the remaining 139 off-site.[4] Mr. Szalay also opined that the proposed development would not adversely impact the 1.7 acre pond existing on the subject property. Mr. Szalay explained that JSM had received *575 a Letter of Interpretation from the New Jersey Department of Environmental Protection ("DEP") which delineated the limits of the wetlands on the property and confirmed that JSM would apply to the DEP for all necessary permits. JSM also agreed to pay its fair share contribution toward the costs of County improvements being made to a nearby intersection.
Next, JSM offered the testimony of Harold Maltz, a professional traffic engineer, in further support of its application. Mr. Maltz testified that he conducted a traffic impact study of the proposed site, focusing on the intersection of Oak Tree Road with New Dover and Plainfield Roads. While Maltz acknowledged that the proposed development would have an impact on the intersection, he noted that JSM's proposed widening of New Dover Road would both mitigate the impact and improve the efficiency of the intersection over its present state.
Public comment in opposition to JSM's application was also heard. Following the Board's deliberations, the application was unanimously denied. That decision was memorialized in a resolution adopted on March 23, 1999, which concluded that "[t]he application is an over intensive use of the property, encroaches wetlands buffer on the property and fails to take into consideration the impact of the road widening and road improvements being contemplated by the County and the Township of Edison."
An appeal to this court was thereafter filed by JSM. I conducted a case management conference regarding JSM's appeal on November 15, 1999. After reviewing the Resolution and addressing the matter with counsel at the case management conference, it became apparent that the Board's resolution[5] as adopted, could not validly support the Board's denial under New Jersey case law, notably Dunkin' Donuts of New Jersey, Inc. v. Township of North Brunswick, 193 N.J.Super. 513, 515, 475 A.2d 71 (App.Div.1984)(planning boards lack any authority to limit or prohibit uses based upon the generation of traffic where the use is legislatively permitted by ordinance); accord, Lionel's Appliance Center, Inc. v. Citta, 156 N.J.Super. 257, 383 A.2d 773 (Law Div.1978)(planning board is without authority to deny site plan approval because of existing offsite conditions); and Pizzo Mantin Group v. Township of Randolph, 137 N.J. 216, 229, 645 A.2d 89 (1994)(planning board's review of a development application must be within the framework of the standards prescribed by ordinance); Shim v. Washington Tp. Planning Bd., 298 N.J.Super. 395, 411, 689 A.2d 804 (App.Div.1997)(planning board's site plan review was never intended to include legislative or quasijudicial power to prohibit a permitted use); PRB Enter., Inc. v. South Brunswick Planning Bd., 105 N.J. 1, 518 A.2d 1099 (1987). Given the facial invalidity of the reasons set forth in the Board's resolution, pursuant to my inherent authority to resolve questions of law at pre-trial conferences, Sheild v. Welch, 4 N.J. 563, 567, 73 A.2d 536 (1950), I vacated the Board's decision and remanded the matter for reconsideration on the merits, with limiting instructions that the Board could not lawfully consider, as reasons for denial, the intensity of the use (since that was a Legislative prerogative) or existing offtract conditions (since the Board, in *576 accordance with the provisions of N.J.S.A. 40:55D-42, was limited to requiring, as a condition of approval, a pro rata contribution of the costs of those improvements made necessary by the project). While the Board's review was thus somewhat constrained, all counsel understood, as did the Board members (as evidenced by the transcripts of those subsequent proceedings) that the Board was free to revisit any issues of concern addressed at the prior hearings, including on-site circulation or pro-rata contributions pursuant to N.J.S.A. 40:55D-42.
Consistent with the order of remand, a further public hearing was held, and on January 19, 2000, after being properly instructed by Board Counsel regarding the applicable law, the Board rendered a decision granting preliminary and final site plan and conditional use approval to the applicant. These approvals were made subject to a number of conditions, many of which were imposed in specific response to particular concerns raised during the public portion of the meeting. A Resolution memorializing this decision was adopted on February 15, 2000. An appeal of this decision by various objectors followed.
III. The Merits of the Appeal[6]
In their appeal, the objectors attack the Board's approval of JSM's development application on several grounds. Specifically, the plaintiffs contend: (1) that the proposed Walgreen's cannot properly be deemed a "drugstore" under the local zoning code[7]; (2) that a variance was necessary for the proposed Walgreen's drive-thru service window; (3) that they were deprived of the right to crossexamine the applicant's environmental expert; and (4) that the Board should have deferred making any decision on JSM's proposed project until after Middlesex County had completed plans for upgrading a nearby intersection which would likely be impacted by the proposed development.
A. Walgreen's Status as a Drug Store
Section 86-17(A)(7) of the Edison Township Zoning Ordinance lists among the permitted principal uses in the LB zone "Hardware stores, bakeries, music stores, stationery stores and drug stores." In construing an ordinance, "[t]he general principle is that ordinances should be liberally construed in favor of the municipality." Atlantic Container, Inc. v. Township of Eagleswood Planning Bd., 321 N.J.Super. 261, 270, 728 A.2d 849 (App.Div.1999). This is because "the Planning Board can be expected to have more than a passing knowledge of the legislative intent at the time of the enactment" by virtue of the fact that the board "has input into the adoption of a master plan ... as well as the adoption or amendment of a zoning ordinance." Id. at 269, 728 A.2d 849. While I do not defer entirely to the Board's treatment of the proposed Walgreen's as a "drugstore" within the meaning of Section 86-17(A)(7), it is significant that throughout JSM's application process, the Walgreen's has at all times been viewed by the Board as a "drugstore." Other than the objectors naked assertions to the contrary, there is simply no support for their position, either factually or legally, that Walgreen's cannot qualify as a drugstore under the Code.
*577 B. Whether The "Drivethru" Servicing the Drug Store is an Accessory Use
The more difficult question raised, however, is the objectors' contention that a variance was necessary for the Walgreen's drive-thru window. The applicant, predictably, disagrees, and argues that because the proposed drive-thru is "on the same lot with and customarily incidental to" a permitted use [as defined by Section 86-17(C) ], it qualifies as an "accessory use" thereby obviating the need for any variance.
It has been said that the law relating to accessory uses "is not difficult to recite but difficult to apply." Charlie Brown of Chatham, Inc. v. Board of Adj. for Tp. of Chatham, 202 N.J.Super. 312, 323, 495 A.2d 119 (App.Div.1985). Whether a particular activity or use qualifies as "accessory" is an ever-evolving puzzle[8], a mixed question of law and fact, and depends, at least to some extent, upon societal norms, expectations and common sense. Indeed, new legislation, enlightened ideas, and advances in technology will undoubtedly affect what society ultimately learns to accept as compatible uses.[9]
As construed by the courts, an accessory use may be predicated upon a specific provision found in the local zoning ordinance, or it may be based upon the fact that the use is so customarily incidental to the principal use that it may be deemed, as a matter of law, to be impliedly part and parcel of the permitted use. Shim v. Washington Tp. Pl. Bd., 298 N.J.Super. 395, 401, 689 A.2d 804 (App. Div.1997), citing, 2 Arden H. and Daren A. Rathkopf, The Law of Zoning and Planning, sec. 23.01 at 23-6 (4th Ed.1985); accord Borough of Northvale v. Blundo, 85 N.J.Super. 56, 59, 203 A.2d 721 (App.Div. 1964); Zahn v. Board of Adj., 45 N.J.Super. 516, 521-22, 133 A.2d 358 (App.Div. 1957); see also Colts Run Civic Assoc. v. Colts Neck Tp. Zoning Bd. of Adjust., 315 N.J.Super. 240, 249, 717 A.2d 456 (Law Div.1998) (nature of implicit incidental uses and reality of modern living may outstrip the literal language of the zoning ordinance); and see Charlie Brown of Chatham, Inc., supra, 202 N.J.Super. at 322, 495 A.2d 119. The Supreme Court, in State v. P.T. & L. Constr. Co., 77 N.J. 20, 26-27, 389 A.2d 448 (1978) has framed the issues in this fashion:
In analyzing whether a use is customarily incident to the permitted use, two determinations must be made. The first is whether the use is incidental to the main use: does the use ... bear a close resemblance and obvious relation to the main use to which the premises are put? Second, it must be determined whether a use which is found to be incident to the permitted use is also a customary use.

*578 * * *. The fact that a use is not customarily indulged in, however, is not conclusive, and even if the use in question is found in a small percentage of similar main uses, the use may still be found to be "customary".
See also Honigfeld v. Byrnes, 14 N.J. 600, 606, 103 A.2d 598 (1954).
In assessing whether a use is sufficiently "customary" so as to qualify as an accessory use, "the operative fact is not how often the primary use requires or involves the alleged accessory use, but whether incidents of the accessory use are often found in conjunction with this primary use (emphasis added)." Tanis v. Township of Hampton, 306 N.J.Super. 588, 604, 704 A.2d 62 (App.Div.1997); State v. P.T. & L. Constr. Co., Inc., supra, 77 N.J. at 26-27, 389 A.2d 448; see also Jantausch v. Bor. of Verona, 41 N.J.Super. 89, 100, 124 A.2d 14 (Law Div.1956), aff'd, 24 N.J. 326, 131 A.2d 881 (1957) where Judge (later, Chief Justice) Weintraub explained:
The practice should be sufficient to justify the observation that it is not unique or rare. It should be appreciable or perhaps substantial. It should be sufficient to constitute a recognized mode of activity in the field, but it need not be the more prevalent one (emphasis added).
Accord Schantz v. Rachlin, 101 N.J.Super. 334, 244 A.2d 328 (Ch.Div.1968), aff'd o.b., 104 N.J.Super. 154, 249 A.2d 18 (App.Div. 1969)( "customary" requirement can be met even where the majority of principal permitted uses do not involve the proposed accessory use).
Although thin, there is some limited evidence in the record that both the applicant and the Board point to and rely upon in support of their joint contention that the proposed "drive-thru" qualifies as an accessory use. Julius Szalay, the applicant's expert planner, opined that the proposed "drivethru" is "normal for drug stores that you see in many areas these days." While it certainly would have been within the Board's discretion to have accepted this expert's opinion testimony, and hence, the conclusion that the proposed drivethru was "accessory" to the drug store, I am reluctant to infer this to be so, since, in my view, the Board made no actual findings on the record in this regard. Under the circumstances, the better approach would be to afford the Board the opportunity, through a limited remand, to make additional findings regarding this issue. Medici v. BPR Co., 107 N.J. 1, 25, 526 A.2d 109 (1987)(Board's resolution must reflect deliberate and specific findings of fact necessary to sustain its conclusions); see also, Harrington Glen, Inc., v. Mun. Bd. of Adj. of Bor. of Leonia, 52 N.J. 22, 28, 243 A.2d 233 (1968).
On remand, the applicant may, at its option, introduce such additional evidence on the question of whether the drivethru window proposed qualifies as an accessory use, as it deems appropriate. If the applicant does so, any member of the public (or Board consultant) is likewise free to introduce additional evidence or comment upon the issue as well. If the applicant opts not to introduce any additional evidence, the Board's findings must, of necessity, be limited to the previously established record.
C. Plaintiffs' Inability to Crossexamine the Applicant's Environmental Consultant
Plaintiffs offer two additional grounds for reversal. First the plaintiffs argue that pursuant to N.J.S.A. 40:55D-10d they had a right of cross-examination of all interested parties and were denied that right when the applicant's environmental expert was not produced to answer questions regarding the impact of development on the existing pond. This argument *579 is utterly lacking in merit. Any claimed error resulting from the applicant's failure to produce its environmental expert for cross examination is necessarily harmless because any impact on the pond and/or wetlands on the subject property falls within the exclusive jurisdiction of the DEP pursuant to the Freshwater Wetlands Protection Act, N.J.S.A. 13:9B-1 et seq. That Act preempts all laws and ordinances which attempt to regulate freshwater wetlands. See New Jersey Chapter of NAIOP v. New Jersey Dept. of Envtl. Protection, 241 N.J.Super. 145, 574 A.2d 514 (App.Div.1990), cert. den. 122 N.J. 374, 585 A.2d 379, 380 (1990).
D. The Board's Responsibility to Decide the Merits of a Development Application Within the Statutory Time Limits and Lack of Authority to Defer Decision While Awaiting County Approvals or Action
Plaintiffs' final argument is likewise without merit. Plaintiffs contend that approval should have been withheld by the Board in light of the impending Middlesex County intersection plan. In Manalapan Holding Co. v. Planning Bd. of the Township of Hamilton, 92 N.J. 466, 457 A.2d 441 (1983), the Hamilton Planning Board took a similar position and claimed the right to defer decision on a preliminary subdivision application pending county approval. This position was unanimously rejected by our Supreme Court which held, pursuant to N.J.S.A. 40:55D-48(c), that a Board must act within the statutory time period, and may not defer decision pending resolution of those development issues within the County's jurisdiction, or for any other reason, if the effect of that deferral is to unilaterally extend the statutory time period for granting or denying a development application. Id. at 478, 457 A.2d 441. Like applications for preliminary subdivision approval, applications for preliminary site plan approval are governed by a statutory review period which may not be extended absent consent from the applicant. N.J.S.A. 40:55D-46(c) expressly provides that "[u]pon the submission to the administrative officer of a complete application for a site plan ... the planning board shall grant or deny preliminary approval within 45 days ..." Where the board fails to act, it "shall be deemed to have granted preliminary approval of the site plan." N.J.S.A. 40:55D-46(c). Plaintiffs' assertion that it was within the Board's power to delay final approval pending resolution of the County's intersection plan is clearly contrary to the MLUL and Supreme Court precedent. The Board was undoubtedly aware of its long standing statutory and legal obligations to hear and decide a "complete" development application, [see N.J.S.A. 40: 55D10.3], and properly rejected the requested deferral[10].
IV. The Necessity for a Remand
While perhaps well-founded, the Board's contentions on appeal, that the proposed Walgreen's drive-thru was accessory to the drug store, cannot properly be adjudicated on this resolution. This matter is therefore remanded to the Board in order to *580 make findings of fact in this regard, which shall be based upon the existing record unless the applicant elects to introduce supplemental proofs on this issue. If such proofs are introduced, any interested party (or board consultant) may likewise, address the issue through expert testimony or public comment. All of the other arguments raised by plaintiffs are, for the reasons set forth above, rejected.
V. Proceedings Following Remand
On July 24, 2000, approximately one month after my decision remanding the matter for further proceedings, a public hearing was held, at which time both the applicant and plaintiffs/objectors proffered additional expert testimony in support of their respective, contrary contentions regarding whether the drive thru windows were "accessory" to the Walgreen's pharmacy.
The first of four witnesses called by the applicant was David Cohen, Walgreen's central New Jersey regional manager, who explained that the primary motivation having a drive-thru window was for the convenience of pharmacy customers, especially the elderly, the handicapped, and parents with children. He indicated that during the last six years, both Walgreen's and its competitors had routinely included drive-thru windows in their respective facilities, emphasizing that the newer stores "typically" opt for a double lane drive-thru window, (where space permits) in order to better "get people in and out as quick as possible" during the peak traffic times. Additionally, Cohen also noted that ten (10) out of the fourteen (14) New Jersey Walgreen's are presently supported by drive-thru windows, including two (2) out of the three that were previously approved in the Township of Edison, with the third being situated in an existing, older building which could not reasonably have been retrofitted to add a drive through after-the-fact. Finally, Cohen made it clear that the drive-thru's hours of operation would not extent beyond, but rather would coincide with the pharmacy's hours of operation.
Next to testify was Harold Maltz, a licensed traffic consultant, who buttressed Cohen's opinion that the drive-thru windows were especially convenient for pharmacy customers, allowing easy access during inclement weather, while reducing the need for on-site parking. As noted by Maltz, the average waiting time per vehicle was estimated to be only two to three minutes, which statistically represented very low usage. He also reported that he independently canvassed three prominent engineering-consulting firms, and ascertained that out of fifty (50) different pharmacy applications, all but two (2) included drive-thru windows.
Craig Letts, a Real Estate Consultant, also testified that each of the top four drugstore chains routinely request drive-thrus to service their facilities. Drawing from his own experiences, he relayed to the Board that in more than sixty non-urban, drugstore applications, each had included drive-thru windows.
Lastly, in support of the merits of its application, JSM offered the testimony of Lester Nebenzhal, a professional planner, who concluded that the use was a permitted "accessory" use within the LB Zone because it was "customarily incidental to the permitted use," and because it was completely consistent with the definition of "accessory use" as embodied in Edison's own Zoning Ordinance.
In rebuttal, the objectors called Antone J. Nelessen, a professional planner and faculty member of Rutgers University, who offered his contrary opinion that the proposed drive-thru windows were not "accessory" to the proposed pharmacy because: *581 (1) drive-thru windows are not common in the LB retail zone; (2) the residential character of the neighborhood makes the proposed use unique; (3) the Edison Ordinance only mentions drive-in banks, so that the inclusion of the drive-thru pharmacy in the LB zone is "absurd"; and, (4) given its scale, the impact of drive-thru windows would disturb the character of the buildings in the neighborhood, would have negative impact on "pedestrianism", would bring additional traffic, would increase the probability of spill over into a nearby pond, and would lead to destruction of the historic character of the site. Finally, Nelessen insisted that drive-thru windows were inconsistent with the Ordinance, although the Ordinance's definition of "accessory use" was, admittedly, not dependent upon zone district or the permitted uses.
On August 14, 2000, following the conclusion of the public hearing, the Board reaffirmed its approval of the project ( 5-1, with one member abstaining) concluding that the drive-thru windows were "accessory" to the pharmacy. This second appeal followed.
VI. The Merits of the Objectors' Second Appeal
Following a remand, the board is "required by law to carry out the mandate of the court," Cox, New Jersey Zoning and Land Use Administration, s. 33-6.2 (GANN, 2000); Flanigan v. McFeely, 20 N.J. 414, 420, 120 A.2d 102 (1956), which, in this instance required it to determine whether the proposed drive thru windows were "accessory" to the pharmacy. Consequently, the Board was required to, and indeed did consider whether the proposed use was: 1) incidental to the main use and 2) customary. See State v. P.T. & L. Const. Co., 77 N.J. 20, 26-27, 389 A.2d 448 (1978); Shim v. Washington Tp. Pl. Bd., 298 N.J.Super. 395, 401, 689 A.2d 804 (App.Div.1997).[11]
In its amended Resolution, the Board specifically concluded that the drive-thru windows in question would be incidental to and bear a significant relationship to the main use. In addition, the Board found that "over the past five to six years all of the major drug stores in competition ... are building the same type of stores with drive-thru windows." Indeed, the Board acknowledged that the Township had historically encouraged drive-thru windows for the convenience of customers whenever possible, noting that Edison had previously granted "three other applications for drug-stores containing a drive-through window (emphasis added)." Finally, the Board found as a fact, that approval of the drive-through windows in this case "would not have a significant impact upon surrounding area," specifically rejecting the contrary contentions and evidence of the Objectors.
Notwithstanding the Board's conclusion that the drive thru windows were "accessory," the objectors, both below, and again on appeal, urge that Tanis v. Township of Hampton, 306 N.J.Super. 588, 604, 704 A.2d 62 (App.Div.1997) requires an assessment of their impact on the Township's master plan as well as on neighboring uses. In this regard, the Objectors contend that the approval of the project, as proposed, would have detrimental impact *582 because: (1) the pharmacy building is too large; (2) there would be pedestrians on the site; (3) there would be an increase in run-off which, in turn might potentially pollute an on-site pond; and (4) the site's historic value would be damaged. While the Board was clearly unpersuaded that these assertions justified a contrary result, (a conclusion with which I unreservedly agree) most, if not all of these criticisms or fears are either entirely speculative or relate to matters utterly beyond the Board's legitimate power to control. See e.g., Pizzo Mantin, supra, 137 N.J. at 229, 645 A.2d 89; accord Frizell, supra, at sec. 14.33 and Cox, supra at sec. 15-10. To the extent that Tanis requires an impact analysis, such an evaluation would not encompass the entirety of the project, but instead would obviously be limited to the impacts attributable to the drive thru windows. Inasmuch as the pharmacy is a permitted use, its impact on the zone plan, or the neighborhood, for that matter, would be legally improper and would constitute an impermissible encroachment into the local legislative domain. Ibid.
Nonetheless, the Board considered, but rejected, the notion that the drive-through windows would have any significant or negative impact. In point of fact, the record demonstrated that the drive thru windows alleviated the need for as much on-site parking as might otherwise have been necessary and helped to eliminate the "stacking" of cars trying to enter and exit the site. Moreover, there was no evidence that the size of the building would be diminished, or that any problems associated with traffic or run-off would be improved by eliminating the drive thru component of the proposed pharmacy. To the extent that the objectors allege an impact which they contend is attributable solely to the proposed drive-thru windows, the proffered "evidence" was either de minimus or highly speculative, and is hardly sufficient to compel reversal of the Board's presumptively valid findings and conclusions to the contrary.
Finally, with regard to the claimed "historic significance," not only is the property not registered as historic, either with the Township or the National Registry, but consideration of this issue by Board without the benefit of an enabling ordinance would clearly be ultra vires and unauthorized.[12]See N.J.S.A. 40:55D65.1 and107 through112; Pizzo Mantin, supra, 137 N.J. at 229, 645 A.2d 89; Estate of Neuberger v. Middletown Tp., 215 N.J.Super. 375, 521 A.2d 1336 (App.Div.1987); See also Cox, supra, at sec. 19-1.1 through 191.5.
VII. Conclusion
Based on my review of the record below, the high quality of the applicant's proofs and in recognition of the strong presumption of validity that attaches to the Board's findings and conclusions, I am entirely satisfied that the decision of the Planning Board cannot be disturbed. The underlying record is more than sufficient to sustain the Board's exercise of discretion in determining that the drive-thru windows were "accessory" to the proposed Walgreen's pharmacy.
For all the foregoing reasons, a judgment will be entered simultaneously with the issuance of this opinion in favor of the *583 Defendants, dismissing Plaintiffs' complaint.
Costs to the Defendants. See TWC Realty v. Zoning Bd. of Tp. of Edison, 321 N.J.Super. 216, 217-18, 728 A.2d 338 (App. Div.1999); R. 4:42-8(a); see also Cox, supra, at sec. 22-4.
NOTES
[1] N.J.S.A. 40:55D1 to 129 (hereafter, "MLUL")
[2] The objectors characterize themselves as persons who "reside near, and/or work near, and or enjoy the subject property."
[3] The approval actually would permit JSM to construct two retail commercial buildings, one of which would contain a 13,905 square foot Walgreen's store, and the other comprising 9,200 square feet of retail stores and a free-standing drive-in bank. The conditional use approval was necessary for the drive-in bank.
[4] JSM did agree on the record, that if so directed by the Board, it would replace one hundred percent of the trees onsite.
[5] The findings purporting to justify the Board's denial of the site plan included: (1) that the proposed development was too intensive for the site (despite the Board's acknowledgment that the project was permitted, and did not exceed coverage, FAR, or any bulk requirements); and (2) that an existing traffic problem affecting a nearby intersection would worsen if the project were approved.
[6] The scope of judicial review and the Board's limited authority in the context of site plan review have been omitted from the published version of this opinion.
[7] According to the objectors, the proposed Walgreens is not the "traditional old drugstore" contemplated in the ordinance, but is, rather, a "little department store."
[8] See Colts Run Civic Assoc. v. Colts Neck Tp. Zoning Bd. of Adjust., 315 N.J.Super. 240, 251, 717 A.2d 456 (Law Div.1998) (concept of an accessory use is ever-evolving).
[9] Obvious examples which have likely affected society's perspective on compatible land uses would include the technical advances in the cellular telephone industry and the recent proliferation of towers and antennae, New Brunswick Cellular v. Old Briges Township Planning Board, supra, 270 N.J.Super. 122, 136, 636 A.2d 588 (Law Div.1993) (cellular telephone antenna held to be accessory use rather than a principal structure; deemed to be customarily incidental to communications facility), as well as legislative enactments such as the Fair Housing Act, N.J.S.A. 52:27D-301 to 329(low and moderate income housing mandated), N.J.S.A. 40:55D-66.5b (permitting family day care homes in residential districts), and N.J.S.A. 40:55D-66.1 (facilitating the development of community residences for victims of domestic violence and for the developmentally disabled in residential zones) due to society's awareness of the increased need for such uses.
[10] To the extent that any proposed development application requires approvals from other governmental agencies, whether local, State, or Federal, the appropriate procedure, where the application is otherwise entitled to a local board's approval, is for the board in question to condition its approval on the applicant's receipt of any and all other governmental approvals as may be required by law. N.J.S.A. 40:55D-22b. That is precisely what the planning board did in this instance. Indeed, even if the board had neglected to require, as a condition of its approval, some other governmental permit or approval that was necessary, that additional approval would still be an implied condition as a matter of law.
[11] As before, my review in this case is limited, in recognition of the fact that local officials are "thoroughly familiar with their communities' characteristics and interests and ... are undoubtedly the best equipped to pass initially on such applications for variances." Ward v. Scott, 16 N.J. 16, 23, 105 A.2d 851 (1954). Absent a clear abuse of discretion, the decision should be sustained. Medici, supra, 107 N.J. at 15, 526 A.2d 109 (1987); Kramer v. Board of Adjustment, 45 N.J. 268, 296, 212 A.2d 153 (1965).
[12] Where a municipal ordinance has been validly adopted under the MLUL, even a temporary delay in issuing municipal approvals or permits may constitute a compensable taking, obligating the municipality to answer in damages. See Cox, supra, at sec. 19 -1.6; N.J.S.A. 40:55D44; and see Lomarch Corp. v. Mayor of Englewood, 51 N.J. 108, 237 A.2d 881 (1968).